Fred W. SHIELDS and Joyce Shields, Plaintiffs–Appellants,

v.

STURM, RUGER & COMPANY, Defendants–Appellees.

No. 87–4961

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1989.

---

James W. Nobles, Jr., Jackson, Miss., A. Kennon Goff, III, Ruston, La., for plaintiffs-appellants.

James A. Becker, Jr., Jackson, Miss., Brian W. Bell, James P. Dorr, Chicago, Ill., for defendants-appellees.

Before REAVLEY, POLITZ and JONES, Circuit Judges.

REAVLEY, Circuit Judge:

The plaintiffs bring this appeal from an unfavorable judgment below in their products liability suit against the manufacturer of a hand gun, claiming that various trial errors require reversal and a new trial. We affirm.

On the night of January 31, 1981, Fred Shields was riding in the front seat of his pickup truck along with two of his sons and his wife, Joyce, who was driving. As they traveled down a rural highway in Mississippi, Fred saw a deer in the distance at the side of the road. In an effort to scare the deer and prevent it from running in front of the truck, as he later testified, Fred decided to shoot at the deer with a .357 magnum single-action "old model" revolver, known as a Blackhawk, which had been brought from the Shields' home. Before he could get the gun out of the window of the truck, however, it discharged into Fred's right leg.

Fred and Joyce Shields brought this personal injury suit against Sturm, Ruger & Company, Inc. (Ruger), for strict products liability, negligent failure to warn, negligent design and negligent manufacture of the revolver. Fred claimed that as he tried to get the gun through the passenger-side window, he bumped the gun against the door frame. Experts testified for the plaintiff at trial that the revolver was defective because it could fire when it was not cocked if bumped or jarred. Ruger denied that the revolver was defective, denied that the gun fired because it was bumped, and alleged that Fred Shields caused the accident by his own negligence. The jury returned a general verdict for the defendant. After denial of their post-trial motions, the Shields brought this appeal.

The Shields claim that they are entitled to a new trial because of three errors committed by the district court. First, the Shields attempted to introduce more than 570 reports made by customers to Ruger involving accidental firings of the Blackhawk and other similar Ruger handguns. The district court admitted only about 70 such reports. Specifically, the trial court excluded all reports received by Ruger after the date of the Shields' accident, all reports of accidental firings caused by something other than a bump, jar, movement, or drop, and all reports of accidental firings that did not specify the cause. Next, the Shields sought to introduce a study, the Rau Survey, that had been prepared by an expert for the defendant's attorneys in a previous case. The district court granted the defendant's motion in limine to exclude the Rau Survey on the grounds of work product immunity. The plaintiffs argued that the work product immunity had been waived by the disclosure of the report in open court in a previous case in California state court and that the defendants should be sanctioned for misrepresentations to the court concerning

the privilege. The district court held that the Rau Survey was privileged and that the defendants had not committed sanctionable conduct. Finally, the plaintiffs argue that the district court erred in defining for the jury the relative standards of care that would apply to the plaintiff as the user of a firearm and to the defendant as the manufacturer of a firearm. The court instructed the jury that the plaintiff would be held to a duty of extraordinary care in handling a firearm, whereas for negligence purposes, Ruger would be held to a standard of ordinary care in manufacturing the revolver.

**Admissibility of Accident Reports**

■ The accident reports submitted by the plaintiffs were not prepared by Ruger. They were not in any way admissions or business records of Ruger. Rather, these reports were statements, mostly letters, made to Ruger alleging that Ruger handguns had accidentally fired. These statements were clearly hearsay and inadmissible for any purpose that assumed the truth of those allegations. The statements were admissible, however, as tending to show Ruger's notice, Ruger's awareness of a danger. *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir.1986); *Soden v. Freightliner Corp.*, 714 F.2d 498, 508 (5th Cir.1983).

■ The trial court admitted approximately 70 of the approximately 570 exhibits for the purpose of proving notice only. The bulk of the excluded exhibits were received by Ruger after the date of the plaintiff's accident. The trial court correctly held that evidence of notice to Ruger after the date of the plaintiff's accident was not relevant. The remaining excluded exhibits were held inadmissible because the reports specified the cause of the accidental firing as one unrelated to the defect in this case or because the reports failed to specify a cause of the firing. For evidence of other accidents to be relevant in a products liability action, the other accidents must be "substantially similar" to the one at issue. *Jackson*, 788 F.2d at 1082–83. When evidence of other accidents is introduced solely to show the defendant's awareness of a dangerous condition, how-

ever, the rule requiring substantial similarity of those accidents to the accident at issue is relaxed, and any differences in the circumstances surrounding the occurrences go merely to the weight to be given to the evidence. *Id.* at 1083. The district court applied the substantial similarity test in an extremely relaxed manner, admitting any report that indicated the cause of the firing was any sort of bump, jar, movement, or even dropping the gun. The district court refused to admit only those reports of accidental firings that were caused by something completely unrelated to the defect alleged by the plaintiffs. The Shields apparently believe that the district court should have allowed them to argue to the jury that in those reports that did not state why the gun accidentally fired, the jury should assume that the accident was caused by the defect alleged by the plaintiffs. That argument clearly would have been improper. The admission of evidence is within the sound discretion of the district court. *Jon–T Chemicals, Inc. v. Freeport Chemical Co.*, 704 F.2d 1412, 1417 (5th Cir.1983). We cannot say that the district court in determining the admissibility of these accident reports in any way abused its discretion.

**Work Product Privilege And The Rau Survey**

The Shields argue that work product immunity for a document is waived whenever that document is disclosed in open court. Because the Rau Survey was disclosed in a trial in a California state court, the Shields argue that the district court erred in granting the defendant's motion in limine excluding the report, erred in failing to compel discovery on the report, and erred in refusing to award sanctions against the defendant for its "misrepresentation" to the court that the survey was privileged. The defendant contends that the survey was put together in connection with another trial in anticipation of litigation and by a consulting expert retained specifically for that purpose. The defendants point out that they filed a similar motion in limine to exclude the survey in the California court, which was denied, that disclosure of the

report was compelled by the court pursuant to a protective order, that the report was introduced at trial by the plaintiffs over defendant's objections, and that the defendant's use of the report in the California trial was limited to rebutting the plaintiff's allegations concerning the report.

■ The work product privilege is very different from the attorney-client privilege. The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties. The work product privilege, however, does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent. *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C.Cir.1980). Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege. *Id.;* 8 Wright & Miller, Federal Practice & Procedure § 2024, at 210 (1970). This circuit has held, however, that the work product privilege is waived when the attorney requests the witness to disclose the information or when the attorney discloses the information to the court voluntarily or makes no objection when it is offered. *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir.1983).

■ The Rau Survey was prepared in anticipation of litigation by a consulting expert who was specially employed by Ruger's attorneys in preparation for trial and who was not expected to be called as a witness. The district court was unquestionably correct in concluding that the Rau Survey was protected by the work product privilege; the only question is whether that privilege was waived. When a party is compelled to disclose privileged work product and does so only after objecting and taking other reasonable steps to protect the privilege, one court's disregard of the privileged character of the material does not waive the privilege before another court. The record is clear that Ruger's attorneys asserted the privileged character of their work product at every opportunity before the California court, that they objected to any disclosure of the Rau Survey, and that they disclosed the survey under compulsion by the court, not voluntarily. Ruger did not waive its work product privilege before the California court, and that privilege was properly asserted and properly recognized by the district court below.

**Standard of Care**

■ In the district court's instructions to the jury on the negligence causes of action, the district court instructed the jury that they should hold the plaintiff's action to a standard of extraordinary care but that they should hold the defendant's conduct in manufacturing the gun to a standard of ordinary care. Mississippi case law does not speak directly to either of these instructions. The Mississippi Supreme Court has held that one who uses a gun must use extraordinary care not to injure another, although no Mississippi court has ever addressed the question in a contributory negligence context. *See Shurley v. Hoskins*, 271 So.2d 439, 444 (Miss.1973). The Shields do not challenge this instruction but argue that if the plaintiff is held to a duty of extraordinary care in handling the gun, then the defendant should also be held to a duty of extraordinary care in manufacturing the gun. Although no Mississippi court has ever held the manufacturer of a product to a duty of extraordinary care, we cannot say that the plaintiff's position is without merit. *Cf. Garcia v. Coast Elec. Power Ass'n*, 493 So.2d 380, 382 (Miss. 1986) (holding power company to duty of "the highest degree of care for the protection of the public and individuals" in the distribution and sale of electricity); *see also Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1535–36 (10 Cir.1986) (applying Kansas law to hold manufacturer of revolvers to "the highest degree of care in design of the product"). *See generally Shurley v. Hoskins*, 271 So.2d at 444 ("It is also true under the general law of negligence, that the degree of care required of one increases with the degree of danger involved."). Nevertheless, the appellants have been unable to articulate to this court

any way in which they were prejudiced by this instruction. The plaintiffs' theories of strict liability for defective design and negligent design are exactly the same. The plaintiffs were unable to convince the jury that the product was defective under their strict liability theory when they were under no obligation to prove any breach of duty. The jury, therefore, could not have found that the design was negligent even under a higher standard. If the court's instructions on the standard of care in the manufacture of firearms was erroneous, then it was harmless error. Because the appellants cannot demonstrate any error committed by the trial court that prejudiced them in the least, we affirm the judgment of the district court.

AFFIRMED.