Elouise Pepion COBELL, et al., Plaintiffs,

v.

Gale A. NORTON, Secretary of the Interior, et al., Defendants.

No. CIV.A. 96–1285 RCL.

United States District Court, District of Columbia.

March 3, 2003.

Keith M. Harper, Lorna K. Babby, Native American Rights Fund, Washington, DC, Dennis Marc Gingold, Washington, DC, Elliott H. Levitas, Kilpatrick Stockon, LLP, Washington, DC, for Plaintiffs.

J. Christopher Kohn, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, Brian L. Ferrell, U.S. Dept. of Justice, ENRD, Washington, DC, Mark E. Nagel, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Atty.'s Office, Washington, DC, Charles Walter Findlay, III, Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, Seth Brandon Shapiro, U.S. Dept. of Justice, Civ. Div., Washington, DC, Jonathan Brian New, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, Sandra Peavler Spooner, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, John Charles Cruden, John Stemplewicz, U.S. Dept. of Justice, Civ. Div., Washington, DC, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Litigation Branch, Washington DC, for Kevin Gover.

J. Christopher Kohn, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, Brian L. Ferrell, U.S. Dept. of Justice, ENRD, Washington, DC, Phillip Martin Sel-

igman, U.S. Dept. of Justice, Civ. Div., Washington, DC, Mark E. Nagel, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Atty.'s Office, Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, Terry M. Petrie, U.S. Dept. of Justice, ENRD, Gen. Litigation, Denver, CO, Michael John Quinn, Seth Brandon Shapiro, U.S. Dept. of Justice, Civ. Div., Washington, DC, Jonathan Brian New, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, Gino D. Vissicchio, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, Sandra Peavler Spooner, John Warshawsky, David J. Gottesman, Peter Blaze Miller, Mathew J. Fader, John J. Siemietkowsi, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, John R. Kresse, Timothy E. Curley, U.S. Dept. of Justice, Civ. Div.— Commercial Litigation Branch, Washington, DC, Tracy Lyle Hilmer, U.S. Dept. of Justice, Civ. Div., · Washington, DC, Dodge Wells, U.S. Dept. of Justice, Washington, DC, John Stemplewicz, U.S. Dept. of Justice, Civ. Div., Washington, DC, for Dept. of Interior.

J. Christopher Kohn, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, Mark E. Nagel, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Atty.'s Office, Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, Daniel Gordon Jarcho, McKenna Long & Aldridge LLP, Washington, DC, Seth Brandon Shapiro, U.S. Dept. of Justice, Civ. Div., Washington, DC, Jonathan Brian New, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, Herbert· Lawrence Fenster, Michael James Bearman, McKenna Long & Aldridge, LLP, Washington, DC, Sandra Peavler Spooner, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Tracy Lyle Hilmer, U.S. Dept. of Justice, Civ. Div., Washington, DC, Dodge Wells, U.S. Dept. of Justice, Washington, DC, John Stemplewicz, U.S. Dept. of Justice, Civ. Div., Washington, DC, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, for Gale Norton.

Robert D. Luskin, Patton Boggs LLP, Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, Seth Brandon Shapiro, U.S. Dept. of Justice, Civ. Div., Washington, DC, Jonathan Brian New, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, for John D. Leshy.

Robert D. Luskin, Patton Boggs LLP, Washington, DC, Seth Brandon Shapiro, U.S. Dept. of Justice, Civ. Div., Washington, DC, Jonathan Brian New, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, for Edward B. Cohen.

Henry A. Azar, Jr., U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, Seth Brandon Shapiro, U.S. Dept. of Justice, Civ. Div., Washington, DC, Jonathan Brian New, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, Elizabeth Wallace Fleming, Trout & Richards, P.L.L.C., Washington, DC, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, for Michael G. Rossetti.

B. Michael Rauh, Manatt, Phelps & Phillips, L.L.P., Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, Seth Brandon Shapiro, U.S. Dept. of Justice, Civ. Div., Washington, DC, Jonathan Brian New, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, Tracy Lyle Hilmer, U.S. Dept. of Justice, Civ. Div., Washington,

DC, Dodge Wells, U.S. Dept. of Justice, Washington, DC, for Neal McCaleb.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on defendants' motion to file under seal a portion of their response to the Seventh Report of the Court Monitor ("Seventh Report") [1304–1], which was filed on May 16, 2002 and defendants' unopposed motion to file under seal their notice of filing the original declaration of James E. Cason [1315–1], which was filed on May 30, 2002. Also before the Court is defendants' motion for a protective order regarding allegedly privileged documents that were referenced in the Seventh Report [1320–1], which was filed on May 31, 2002. Upon consideration of defendants' motions, plaintiffs' opposition thereto, defendants' reply briefs, and the applicable law in this case, the Court finds that defendants' motions should be granted.

### I. PROCEDURAL BACKGROUND

On May 2, 2002, the Court Monitor (now Special Master–Monitor) ("Monitor") filed the Seventh Report.[1] The attachments submitted with the Seventh Report included four letters between Justice Department attorneys and Interior Department officials, and two interdepartmental memoranda from the Office of the Special Trustee to the Office of the Solicitor (collectively, "the Six Documents"). On May 16, defendants filed their response to the Seventh Report. On the same date, defendants moved to file under seal a portion of their response that discussed the Six Documents, claiming that the documents fell under the protection of the attorney-client privilege and the work product doctrine. Attachment 3 of defendants' response contained a facsimile copy of a declaration that was composed by Associate Deputy Interior Secretary James E. Cason. Plaintiffs filed their opposition brief on May 30, and defendants submitted their reply brief on June 11. On May 30, defendants

filed an unopposed motion seeking to file under seal the original declaration of James E. Cason.

On May 31, defendants moved for a protective order regarding the Six Documents, again asserting that the documents were protected by attorney-client privilege and the work product doctrine. The relief sought in the order included (1) striking the copies of the Six Documents attached to the Seventh Report from the record and ordering them to be returned to defendants, (2) striking from the record portions of the Seventh Report that discussed the Six Documents, (3) ordering the Monitor, plaintiffs, and plaintiffs' counsel to return all copies of the Six Documents to defendants, and (4) barring use or publication of the Six Documents without permission from defendants or a court order. Plaintiffs submitted an opposition brief on June 14, and defendants filed a reply brief on June 26.

### II. LEGAL ANALYSIS

#### A. Attorney–Client Privilege

1. Applicability

■ "The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 148 F.3d 1100, 1103 (D.C.Cir.1998). The party that asserts the existence of the attorney-client privilege possesses the burden of demonstrating its applicability. *Federal Trade Commission v. TRW, Inc.*, 628 F.2d 207, 213 (D.C.Cir.1980). Not only the privileged relationship but all essential elements of the privilege must be shown "by competent evidence and cannot be 'discharged by mere conclusory or ipse dixit assertions.'" *See Martin v. Valley National Bank of Arizona*, 140 F.R.D. 291, 302 (S.D.N.Y.1991) (internal citation omitted).

In a recent opinion, this Court explained the applicability of the attorney-client privi-

---

1. During the events at issue, the authority of the Monitor was provided by the terms of his appointment order of April 16, 2001. The Court makes no determination in the instant memoran-

dum regarding the scope of the Monitor's authority pursuant to the September 17, 2002 order appointing him Special Master–Monitor under Rule 53 of the Federal Rules of Civil Procedure.

lege to the instant litigation, in which trust beneficiaries are asserting claims against a trustee:

> The Court will, consistent with logic and prevailing authority, recognize the existence of an attorney-client privilege where a trustee seeks legal advice *solely* in his own personal interest or where the discovery material has been shown to relate *exclusively* to non-fiduciary matters. But the Court will not immunize every communication with counsel simply because it involved some incidental interest, or benefit distinguishable from, but ancillary to, that of the trust beneficiaries. With regard to litigation-related communications, the Court will not recognize the existence of an attorney-client privilege except where a trustee obtained legal advice *solely* to protect himself personally or the government from civil or criminal liability, an objective that is inherently inconsistent with his or her fiduciary capacity.

Mem. and Order dated Dec. 23, 2002 at 10 (emphasis in original) (footnotes and citations omitted). Accordingly, the Court must determine (1) whether any of the Six Documents fall under the protection of the attorney-client privilege and (2) if so, whether the fiduciary exception applies to any of the Six Documents.

■ After examining the Six Documents, the Court concludes that the four letters and one of the memoranda fall within the scope of the attorney-client privilege. The letters from Justice Department counsel to the Office of the Solicitor provide legal advice in the form of recommendations about the steps that Interior Department officials should take in order to respond to the document requests of Special Master Balaran ("Master"). The first of the two memoranda from the Office of the Special Trustee to the Office of the Solicitor, which is dated April 12, 2002 (the "first memorandum" or "earlier memorandum"), seeks answers to a series of questions about how to comply with these document requests. The second of the two memorandum, which is dated April 24, 2002 (the "second memorandum" or "later memorandum"), discusses and responds to one of the four letters from Justice Department

Counsel to the Solicitor's Office. Two of the letters appear to have been originally accompanied by a cover letter stating that their contents may be "privileged, confidential, or otherwise protected from disclosure under applicable law." Additionally, the four letters and the earlier memorandum were submitted to the Master accompanied by a transmittal letter explaining that they were being provided for his in camera review, and requesting that they not be publicly disclosed without first providing defendants an opportunity to seek a final ruling on the issue of whether they were protected under attorney-client privilege or as work product. *See* Dept. of the Interior's Resp. to the Seventh Report of the Ct. Monitor ("Resp. to Seventh Report") at 14 & Attach. A–E. Defendants have also submitted an affidavit representing that the four letters were treated by their senders and recipients as confidential communications. *See* Interior Defs.' Mot. for Protective Order Regarding Privileged Docs. Referenced in the Seventh Report of the Ct. Monitor ("Mot. for Protective Order"), Attach. A (Declaration of Larry Jensen) ¶¶ 5–7.

■ However, the Court is unable to conclude that the second memorandum merits protection under the attorney-client privilege. Although it arguably "provides legal advice or services," in that it quotes from and summarizes one of the four letters and opines as to the credibility of the opinions expressed in that letter, defendants have failed to demonstrate that the recipient and sender expected that the memorandum would remain confidential. In *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1514 (D.C.Cir.1993), (the D.C. Circuit explained that "the critical factor for purposes of the attorney-client privilege was that the communication be made '*in confidence* for the purpose of obtaining *legal* advice *from the lawyer.*'") (quoting *FTC v. TRW, Inc.*, 628 F.2d 207, 212 (D.C.Cir.1980)) (emphasis in original). But there is no statement accompanying the letter indicating that its contents were to remain confidential. Defendants' briefs contain only the conclusory statement that although the memorandum was pro-

74

duced to the Master without a transmittal letter informing him that its contents should remain confidential, it "is privileged nonetheless." Resp. to Seventh Report at 13; Mot. for Protective Order at 4. Defendants provide no basis for this legal conclusion. Finally, although the declaration of Justice Department attorney Larry Jensen does state that after he received a copy of the memorandum, its recipient and he "did not further disseminate [it], and thus we made appropriate efforts to preserve [its] confidentiality," his declaration provides no evidence that the sender and recipient had an expectation of confidentiality when the letter was originally transmitted. Mot. for Protective Order, Attach. A, ¶ 8. Accordingly, the Court is unable to find that this memorandum warrants the protection of the attorney-client privilege. However, the Court does find that the four letters and the earlier memorandum constitute confidential communications between a client (the Interior Department) and its attorneys (the Office of the Solicitor and Justice Department) made for the purpose of providing or securing legal advice, and are therefore protected under attorney-client privilege.

■ The second issue is whether the fiduciary exception, as it applies in the instant case, applies to these five documents. The Court must determine whether the advice contained in the letters and the first memorandum was *not* provided solely to protect the recipient personally, or the Interior Department generally, from the threat of civil or criminal liability, but instead related in some way to trust administration. As stated above, the subject matter of these documents is the proposed response of the Interior Department to the document requests of the Master. On their face, they do not appear to relate to administration of the trust even in the most tangential way. Moreover, nothing in plaintiffs' briefs indicate that these documents bear any relation to trust administration. The Court therefore concludes that these five documents do not fall within the scope of the fiduciary exception to the attorney-client privilege.

2. Waiver

The next issue is whether defendants have waived the protection afforded by the privilege. Defendants assert that the production of the Six Documents to the Master and the Monitor was not voluntary and therefore did not constitute a valid waiver of attorney-client privilege. Additionally, defendants assert that the publication of the Six Documents in the Seventh Report, and their subsequent dissemination, also did not constitute a valid waiver of attorney-client privilege. The Court will examine each of these claims in turn.

The leading case in the D.C. Circuit on the inadvertent waiver of privileged materials is *In re Sealed Case*, 877 F.2d 976 (D.C.Cir. 1989). In that case, Judge Silberman declared that "[s]hort of court-compelled disclosure, or other equally extraordinary circumstances, we will not distinguish between varying degrees of 'voluntariness' in waivers of the attorney-client privilege." *Id.* at 980 (citation omitted). However, the case law that discusses inadvertent waiver in the context of privileged documents that were obtained by adversary parties manifestly does not apply to the instant situation, in which the Six Documents were not obtained by a party to this litigation but by an officer of the Court. Moreover, another court in this Circuit has clarified that "[v]oluntary disclosure means the documents [at issue] were not judicially compelled." *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 63 n. 2 (D.D.C.1984). Accordingly, the issue before the Court is whether the disclosure of the Six Documents to the Monitor was judicially compelled.

In the Seventh Report, the Monitor explained the means by which he had obtained the Six Documents:

Pursuant to this Court's April 16, 2001 Order and the Secretary of the Interior's April 24, 2001 subsequent direction in light of that Order that the Court Monitor should be provided "access to any Interior offices or employees to gather information necessary or proper to fulfill his duties," the Court Monitor secured these memoranda in light of the issues presented that are of interest to this Court in its determi-

nation of the progress of trust reform and any actions of the Defendants and their counsel that might delay that reform. Seventh Report at 68. In other words, the Monitor obtained these memoranda under the authority vested in him by an order of this Court. The receipt of the documents by a judicial officer under these circumstances is thus analogous to the receipt of documents by this Court for in camera review. It would be difficult for the Court to conclude that, under such circumstances, the disclosure of these documents to the Monitor was not judicially compelled.

A recent D.C. Circuit case accords with this Court's conclusion. In *SEC v. Lavin*, 111 F.3d 921 (D.C.Cir.1997), after defense counsel was informed by the defendant's employer that tapes of the defendant's conversations with his wife had been provided to the Federal Reserve pursuant to its examination powers under 12 U.S.C. § 325, he immediately asserted the confidential marital communications privilege. *Id.* at 924. The D.C. Circuit found that this disclosure did not constitute a waiver of the privilege because the tapes were turned over in response to the Federal Reserve's invocation of its statutory examination powers. *Id.* at 932. Its finding turned in part on its analogy of the martial communications privilege to the attorney-client privilege:

> Generally, the considerations that support a strict approach to waiver in the attorney-client context would appear to apply as well in the marital context: while both privileges serve to promote important public interests by encouraging full and frank communications within special relationships, they must be narrowly construed because of their adverse effect on the full disclosure of truth.

*Id.* at 929 (internal citations omitted). The D.C. Circuit also noted that, in order to establish the existence of the privilege, the defendant had submitted transcripts of the tapes to the district court for in camera review. *Id.* at 933. The court's discussion of this occurrence is particularly relevant to the present situation:

> Citing *In re Sealed Case*, 877 F.2d at 980, which involved disclosure of privileged ma-

terials to third parties, not to the court, the SEC maintains that the [defendant's] uninvited submission of the transcripts for the district court's *in camera* review was improper, and the resulting disclosure thus constituted waiver of the privilege. This contention is meritless. Not only did the district court properly exercise its discretion in deciding to review the tapes *in camera*, but we know of no case, and the SEC points to none, where the submission of privileged material to the court for *in camera* review in order to demonstrate the existence of a privilege has itself been held to constitute waiver.

*Id.* at 933 n. 15. This Court is also unaware of any case in which the submission of privileged material for in camera review has been deemed to constitute a waiver of the asserted privilege. It would thus be illogical to find that a closely analogous situation—namely, the submission of privileged documents to a judicial officer acting pursuant to the authority vested in him by court order—resulted in a waiver of privilege.

█ Case law from other circuits lends credence to the Court's conclusion in this regard. For example, in *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379 (5th Cir.1989), the Fifth Circuit refused to find a waiver of the work product doctrine for a survey used in a prior judicial proceeding when the survey's use in the prior case was compelled by court order and produced over the defendant's objections. The court explained that when a party is compelled to disclose work product, and does so only after objecting and taking other reasonable steps to protect the privilege, "one court's disregard of the privileged character of the materials does not waive the privilege before another court." *Id.* at 382. Similarly, in *Schaffer v. Below*, 278 F.2d 619, 628 (3d Cir.1960), the court held that a disclosure of attorney-client correspondence in response to a court-ordered subpoena did not destroy the privilege. And in a case in which the federal government had been granted permission to inspect the defendants' corporate files and records, the court in *United States v. New Wrinkle, Inc.*, [1954] Trade Cas. (CCH) ¶ 67,883 (S.D.Ohio 1954), found

that no waiver had resulted from the inspections. The court reasoned that

> [i]f Government agents come into a place of business and ask or demand to see files and records, and in a spirit of cooperation, the files and records are turned over to the agents by the business, it does not, in the opinion of this Court, constitute a voluntary turning over of records which can be claimed by the Government as a waiver. There is at least an implied coercion in a request or demand made by Government agents.

*Id.* Accordingly, the Court finds that the letters and the earlier memorandum did not lose the protection of the attorney-client privilege when they were turned over to the Monitor in the course of his investigations.

The Court next turns to defendants' claim that the Monitor's inclusion of the Six Documents as attachments to the Seventh Report, and their subsequent dissemination, did not constitute a waiver of attorney-client privilege. Defendants contend that because these were involuntary disclosures made by third parties, not by defendants themselves, no waiver of privilege resulted.

Recent case law from this Circuit provides support for defendants' contention. In *Lavin*, the D.C. Circuit addressed the argument that the attorney-client privilege had been waived because the defendant's employer and the employer's four outside law firms had had "unfettered access" to the tapes containing the privileged conversations. *Lavin*, 111 F.3d at 929. The court first noted that

> the cases cited [by the district court and the parties] that discuss implied waiver when the holder of the privilege or his attorney is in possession of the materials at issue and fails to take adequate precautions to maintain their confidentiality, *i.e.*, negligent or inadvertent disclosures, offer limited guidance on whether disclosures by third parties over whom the holder of the privilege has virtually no control, *i.e.*, involuntary disclosures, may nonetheless be held to constitute waiver. In cases of involuntary disclosure, at least one court has held that waiver occurs only when the holder has failed to take reasonable steps to reclaim the protected material.

*Id.* at 930. The court concluded that the attorney-client privilege was preserved, although the communications might have been involuntarily disclosed by third parties, if the holder of the privilege made efforts reasonably designed to protect and preserve the privilege. *Id.* The court explained that "[u]nless communications remain privileged as long as the holder has acted reasonably in attempting to protect them, involuntary disclosures by third parties may render illusory the privilege's guarantee of privacy." *Id. Cf. National Wildlife Fed'n v. EPA*, 286 F.3d 554, 574–76 (D.C.Cir.2002) (reaching the same conclusion regarding information protected as confidential trade secrets).

■ This Court concludes that when defendants learned about the disclosures by the Monitor, they commenced efforts that were reasonably designed to preserve the attorney-client privilege. In a portion of defendants' response to the Seventh Report that they seek to file under seal, defendants assert the privilege and request that portions of the Seventh Report that discuss the Six Documents be stricken from the record. Defendants subsequently filed a protective order regarding the Six Documents in a timely manner. In *Lavin*, the court concluded that defense counsel's assertion of the privilege as soon as he learned that the SEC had requested their production sufficed as "reasonable steps to protect [the client's] taped conversations from disclosure and thus did not waive the privilege." *Lavin*, 111 F.3d at 930. It noted that

> [e]ven if Mr. Lavin could have foreseen that third parties might eventually seek to examine the tapes, we know of no case, and the SEC points to none, that requires a privilege holder to engage in a preemptive strike to prevent further disclosure of involuntarily disclosed, privileged materials—in other words, to assert the privilege or institute other legal measures absent a concrete threat of further disclosure.

*Id.* at 931. Similarly, defendants were not under any obligation to assert the privilege with respect to the Six Documents until they discovered that they had been filed as attachments to the Seventh Report. The motions that defendants filed thereafter represent

reasonable and adequate measures taken in order to preserve the protection of the attorney-client privilege. Accordingly, the Court finds that any disclosures of the four letters and of the first memorandum made by parties other than defendants after the filing of the Seventh Report do not constitute a waiver of the attorney-client privilege with respect to these five documents.

### B. Work Product

Because the Court has determined that five of the Six Documents are protected under the attorney-client privilege, it will be unnecessary to determine whether they are also shielded by the work product doctrine. Therefore, the Court will consider the applicability of that doctrine only in conjunction with the second memorandum.

 The work product doctrine protects (1) documents and tangible things (2) prepared in anticipation of litigation (3) by or for the attorney for a party. Fed.R.Civ.P. 26(b)(3). Courts may order production of such materials upon a twofold showing: (1) that the opposing party has a "substantial need of the materials in the preparation of the party's case" and (2) that the opposing party is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id.* The Court may not, however, order discovery of so-called "core work product," *i.e.*, documents that contain "the mental impressions, conclusions, opinions, or legal theories" of opposing counsel. *Id.* As explained by this Court in its memorandum opinion issued on February 5, 2003, in the instant case, defendants may invoke the work product doctrine only upon a showing that the materials at issue were developed exclusively for purposes other than the benefit of trust beneficiaries, *i.e.*, solely to aid in litigation.

 The Court finds that the second memorandum is a document that was developed in aid of the instant litigation for the attorneys for defendants. Additionally, upon examination of the memorandum, the Court finds no indication that it was created in order to facilitate the administration of the IIM trusts. Again, there is nothing in plaintiffs' briefs that would indicate otherwise.

The Court therefore concludes that the second memorandum constitutes protected work product.

The Court next turns to the question of whether the memorandum constitutes "core work product." It has been observed that "[i]n contrast to fact work product, which is discoverable upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Allen*, 106 F.3d 582, 607 (4th Cir.1997). Although the second memorandum was not composed by an attorney, it does quote from and respond to the opinions of a Justice Department attorney that were set forth in one of the four letters. The Court therefore finds that the second memorandum constitutes core work product. Accordingly, the Court must protect the second memorandum from further disclosure in the course of the ongoing discovery proceedings in this case.

### III. CONCLUSION

The Court must take steps to remedy the disclosures of privileged material and protected work product that have already occurred. Additionally, it must take steps to prevent further disclosures of these materials. Accordingly, it is hereby

ORDERED that defendants' motion to file under seal a portion of their response to the Seventh Report of the Court Monitor [1304–1] be, and hereby is, GRANTED. It is further

ORDERED that the portion of defendants' response to the Seventh Report of the Court Monitor that discusses the Six Documents shall be filed under seal. It is further

ORDERED that defendants' unopposed motion to file under seal their notice of filing the original declaration of James E. Cason and of erratum in reference to the declaration [1315–1] be, and hereby is, GRANTED. It is further

ORDERED that defendants' notice of filing the original declaration of James E. Ca-

son and of erratum in reference to the declaration, and the Declaration of James E. Cason attached thereto, shall be filed under seal. It is further

ORDERED that defendants' motion for a protective order regarding allegedly privileged documents that were referenced in the Seventh Report [1320–1] be, and hereby is, GRANTED in part. It is further

ORDERED that the following five (5) documents identified in defendants' motion for a protective order are and remain protected by the attorney-client privilege:

(1) March 29, 2002 letter from Sandra P. Spooner, Deputy Director, Department of Justice ("DOJ") to Larry Jensen, Counselor to the Solicitor, Department of the Interior ("DOI"), transmitting and discussing recent Special Master requests and attaching certain prior letters from DOJ (produced to the Special Master as SMREQ002156–P through SMREQ002160–P), which was attached to the Seventh Report at Tab 13 ("Document 1").

(2) March 25, 2002 letter and revised draft supplemental search memorandum for the Special Master's February 7, 2002 request (as clarified on March 8, 2002) regarding the OIRM move, from Peter B. Miller, Trial Attorney, DOJ, to Larry Jensen, Counselor to the Solicitor, DOI (produced to the Special Master as SMREQ0002167–P through SMREQ0002172–P), which was attached to the Seventh Report at Tab 13 ("Document 2").

(3) March 20, 2002 letter from Peter B. Miller, Trial Attorney, DOJ, to Larry Jensen, Counselor to the Solicitor, DOI, transmitting and discussing the Special Master's March 20, 2002 request regarding IT security (produced to the Special Master as SMREQ0002180–P), which was attached to the Seventh Report at Tab 13 ("Document 3").

(4) April 12, 2002 memorandum from Thomas Slonaker, Special Trustee, to William Myers, Solicitor, DOI, discussing legal advice received by the Office of the Special Trustee concerning its document production in response to the Special Master's March 19, 2002 request regarding the Lee's Summit records transfer and quoting and transmitting the March 19, 2002 letter from DOJ to the Office of the Solicitor transmitting and discussing the Special Master's March 19, 2002 request (produced to the Special Master as SMREQ0002610–P through SMREQ0002614–P), unnumbered copies of which are attached to the Seventh Report at Tab 16 ("Document 4").

(5) March 19, 2002 letter from Amalia B. Kessler, Trial Attorney, DOJ, to Larry Jensen, Counselor to the Solicitor, DOI, transmitting and discussing the Special Master's March 19, 2002 request regarding Lee's Summit records transfer (produced to the Special Master as SMREQ0001357–P through SMREQ0001358–P and as SMREQ0002613–P through SMREQ0002614–P); an unnumbered copy of which is attached to the Seventh Report at Tab 16 ("Document 5").

It is further

ORDERED that the following document identified in defendants' motion for a protective order be and remain protected under Federal Rule of Civil Procedure 26(b)(3) as core work product:

(6) April 24, 2002 memorandum from Thomas Thompson, Principal Deputy Special Trustee, DOI, to William Myers, Solicitor, DOI and Larry Jensen, Counselor to the Solicitor, through Tom Slonaker, Special Trustee, DOI, discussing the March 29, 2002 letter from Sandra Spooner, DOJ, to Larry Jensen, which is attached to the Seventh Report at Tab 12 and Tab 16 ("Document 6").

It is further

ORDERED that the Clerk of the Court shall remove Documents 1–6 from the original and all copies of the Seventh Report of the Court Monitor, which was filed on May 2, 2002, and shall transmit such documents to defendants. It is further

ORDERED that Documents 1–6 shall be deemed stricken from the record in this case. It is further

ORDERED that the Special Master–Monitor identify to the Court all parts and passages in the Seventh Report in which the Special Master–Monitor disclosed or discussed the contents of Documents 1–6, and that all such parts and passages shall be deemed stricken from the record in this case. It is further

ORDERED that the Special Master–Monitor, plaintiffs, and plaintiffs' attorneys shall return to defendants all copies of Documents 1–6 that are in their possession, custody, or control. It is further

ORDERED that Documents 1–6 shall not be disclosed or used without the prior express permission of defendants or prior authorization by this Court.

SO ORDERED.