**UNITED STATES of America ex rel. Stephanie SCHWEIZER, Plaintiff,**

**v.**

**OCE, N.V., Oce North America, Oce Imagistics, and Oce–USA Holding, Inc., Defendants.**

**Civil Action No. 06–648 (RCL).**

United States District Court, District of Columbia.

Sept. 12, 2008.

David W. Sanford, Sanford, Wittels & Heisler, LLP, Washington, DC, H. Vincent McKnight, Jr., Altomease Rucker Kennedy, Ashcraft & Gerel, Washington, DC, for Plaintiff.

Kathleen H. McGuan, Steven David Tibbets, Reed Smith, LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION & ORDER

ROYCE C. LAMBERTH, Chief Judge.

Defendants ("Oce") have moved [39] to unseal all records filed by relators in this False Claims Act ("FCA") suit, in which the United States has declined to intervene. Relators oppose [41] this motion. The Court has considered the parties' various filings, the applicable law, and the entire record herein. For the reasons explained below, Oce's motion shall be GRANTED.

On April 7, 2006, relators filed their original complaint under seal. They alleged that Oce had run afoul of the FCA in two ways: first, it had knowingly sold non-compliant products to the federal government in violation of the Trade Agreements Act; and second, it had breached a contract clause guaranteeing the government a price equal to or less than the lowest price paid by non-government customers for the same product. (*See* Redacted Am. Compl. [30] ¶¶ 20, 32.) On June 2, 2008, after the United States notified the Court that it would not intervene, this Court unsealed relators' amended complaint and the government's notice of non-intervention. Various other, previously-filed documents remain under seal. Oce seeks to unseal all relators' filings, but its motion appears aimed at several exhibits to relators' original complaint, including their confidential disclosure statement. Relators' opposition likewise focuses on these documents.

 In this Circuit, "the starting point in considering a motion to [un]seal court records is a 'strong presumption in favor of public access to judicial proceedings.'" *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C.Cir.1996) (quoting *Johnson v. Greater Southeast Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C.Cir.1991)). This presumption is inherent in "[our] country's common law tradition." *United States v. Hubbard*, 650 F.2d 293, 314 (D.C.Cir.1980). In *Hubbard*, the Court of Appeals "identified six factors that might act to overcome this presumption" of public access. *EEOC*, 98 F.3d at 1409. These six factors, which guide this Court's analysis of the present motion,[1] are:

---

1. Oce proposes a "two-fold" analysis, in which a balancing test employed by other courts in FCA cases would follow application of the six *Hubbard* factors. (Defs.' Mot. at 10.) These out-of-Circuit district court decisions do not persuade this Court that it need go beyond *Hubbard*'s clear analytical framework in resolving Oce's motion. Unlike this Court, it appears these other district courts were not bound by Circuit precedent to apply any particular analysis. *See, e.g., United States ex rel. Howard v. Lockheed Martin*

*Corp.*, No. 99–285, 2007 WL 1513999, 2007 U.S. Dist. LEXIS 37289, at *6–7 (S.D.Ohio May 22, 2007) (balancing "pragmatic need of the FCA defendants for the disclosure of the documents sought to be unsealed versus the potential harm caused by the disclosure to the government or the relators"); *United States ex rel. Yannacopolous v. Gen. Dynamics*, 457 F.Supp.2d 854, 858 (N.D.Ill.2006) ("[i]f the harm of unsealing outweighs the need for the documents, courts [should] deny motions to unseal FCA documents"); *United States ex rel.*

(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property or privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Id.* The Court will examine each factor in turn, considering Oce's asserted need for the sealed materials as one facet of the need for public access.

### (1) Need for public access

■ Oce acknowledges the absence of any specific public interest in this case. (Defs.' Mot. at 7.) Further, this matter has not yet reached the adjudication stage, at which the generalized need for public access reaches its apex. *See Joy v. North,* 692 F.2d 880, 893 (2d Cir.1982) ("An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny."). Nonetheless, because this case involves the FCA, the taxpaying public are, in effect, real parties in interest: the FCA exists "to enhance the Government's ability to recover [pecuniary] losses sustained as a result of fraud." S.Rep. No. 99–345, at 1 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5266. Moreover, our Court of Appeals has characterized public access to judicial records as "fundamental to a democratic state," in that such access "serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally." *Hubbard,* 650 F.2d at 315 & n. 79.

These generalized needs for public access are somewhat abstract, but Oce has also asserted a concrete, particularized need to view the sealed documents. (*See* Defs.' Mot. at 8–11.) Now that relators' amended complaint has been unsealed, the Federal Rules of Civil Procedure oblige Oce to file a responsive pleading. *See* FED.R.CIV.P. 12(a). The Rules provide Oce the option of filing a pre-answer motion to dismiss the complaint based on, *inter alia,* lack of subject matter jurisdiction. *See* FED.R.CIV.P. 12(a)(4), (b)(1). Barring success on such a pre-answer dispositive motion, Oce must ultimately file an answer, in which it must state any defenses it has or reasonably believes it may have to relators' allegations, and must further admit or deny each allegation, "fairly respond[ing] to the substance of [each]." FED.R.CIV.P. 8(b). Oce argues that in either case, it needs access to the sealed exhibits to respond to relators' complaint.

To illustrate this asserted need, Oce offers two examples. First, due to a clerical error, Oce obtained an exhibits list that relators appended to their original complaint. Based on the titles included in that list, Oce observes that "several of the Exhibits appear to be published articles." (Defs.' Mot. at 8–9.) If relators have relied on publicly available information, they may not be "original sources" with standing to bring this FCA action, and Oce could properly move to dismiss for lack of subject matter jurisdiction. *See, e.g., Rockwell Int'l Corp. v. United States,* 549 U.S. 457, ———–———, 127 S.Ct. 1397, 1405–09, 167 L.Ed.2d 190 (2007) (discussing original source limitation on jurisdiction in *qui tam* actions). Unless the ex-

Mikes v. Straus, *846 F.Supp. 21, 23 (S.D.N.Y. 1994) (characterizing motion to unseal in FCA case as "discovery matter[ ]," and resolving motion "based on a pragmatic balancing of the need for and harm risked by, disclo-* sures sought"). Moreover, the Hubbard *factors already account for both the need for disclosure and the potential for prejudice, so any second-stage analysis would be redundant.* See EEOC, *98 F.3d at 1409.*

hibits are unsealed, however, Oce cannot evaluate this potential defense.[2]

Second, Oce notes that relators' complaint repeatedly refers to and incorporates certain attached exhibits which apparently contain information gleaned from Oce's own files. (Defs.' Mot. at 8; *see also* Redacted Am. Compl. ¶ 49.) For instance, several paragraphs discuss exhibit 1, which purports to "show[ ] the disparity between prices paid by non-government customers and the GSA price for the same product." (*See* Redacted Am. Compl. ¶¶ 39–45.) According to the complaint, this exhibit catalogues details of transactions between Oce and non-government customers. (*See id.* ¶¶ 40–41, 43–44.) Yet without viewing exhibit 1, Oce can neither admit nor deny that it contains the information relators allege it contains. Similarly, relators declare that exhibit 3, which purportedly "summariz[es] records from the Oce office in Florida," also documents "gap[s] between prices offered by Oce to non-government customers compared to the higher GSA schedule price." (*Id.* ¶ 47.) Again, without access to this exhibit, Oce cannot ascertain whether its records in fact reflect what relators allege they reflect. Thus, to craft a meaningful answer to relators' complaint, Oce needs access to—at least— those exhibits directly referenced in the complaint.

Because Oce has asserted a pragmatic, individualized need for access to the sealed documents, and in light of the more generalized need for public access to court records discussed above, the Court concludes this factor favors lifting the seal.

**(2) Extent of previous public access**

■ As noted above, Oce contends some of the sealed materials are publicly available, (Defs.' Mot. at 8–9), and in their opposition to Oce's motion, relators implicitly acknowledge as much, (*see* Opp'n at 7–8.) As they point out, however, "public availability of a few documents" does not necessarily warrant "unsealing [ ] the entire record." (*Id.*) Hence, to the extent certain sealed materials are already in the public domain, this factor favors unsealing those materials.

**(3) Objections to unsealing**

■ Relators object broadly to unsealing, but their arguments pertain only to their confidential disclosure statement and the exhibits to their original complaint. Specifically, they claim that the attorney-client and/or work product privileges protect the confidential disclosure statement and exhibits. (*See* Opp'n at 4–9.) Oce, however, argues that by filing these materials as attachments to their complaint, relators waived any privileges that might otherwise have protected them from disclosure.[3] (*See* Reply at 3.)

2. Failure to raise certain other defenses in a pre-answer motion or answer renders them forfeit, but the Court may always dismiss an action for lack of subject matter jurisdiction. *See* Fed.R.Civ.P. 12(h). Nonetheless, if the exhibits indeed demonstrate that the original source defense is available to Oce, waiting to disclose them until relators append them to a dispositive motion or use them at trial would not serve the interests of judicial economy.

3. Neither party has effectively addressed this central issue. In their opposition, relators ignore the procedural posture of Oce's motion and treat it as one for discovery. Yet Oce does not seek to compel *relators* to provide

these documents; rather, it asks *the Court* to unseal documents relators have already provided. This crucial distinction renders much of the authority relators cite wholly inapposite. While they briefly mention waiver, they argue only that they did not waive their privileges by disclosing the sealed documents to *the government,* without addressing the effect of filing said documents *on the Court's docket.* (*See* Opp'n at 4–5.)

Similarly, Oce's reply dismisses the issue in a single sentence. (*See* Reply at 3.) But Oce's citation to Federal Rule of Civil Procedure 10(c) does not resolve the matter. The Rule states that "[a] copy of any written instrument

"The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 148 F.3d 1100, 1103 (D.C.Cir. 1998). The work product doctrine complements the privilege, protecting documents and tangible things prepared in anticipation of litigation by or for a party's attorney. *See* FED.R.CIV.P. 26(b)(3); *see also Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). A party may forfeit either privilege, however, by voluntarily disclosing protected materials to a third party who lacks a common interest with the privilege holder. *Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C.Cir.1981); *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299–1300 (D.C.Cir.1980).

Thus, for purposes of this Court's *Hubbard* analysis, relators' objection is cognizable only if: (1) the attorney client and/or work product privileges apply to the contested documents; *and* (2) relators have not waived those privileges by filing the documents along with their complaint. The Court need not examine the first issue because it concludes relators have voluntarily waived any privilege that might have applied.

Stated succinctly, the question before the Court is whether filing documents under seal along with one's complaint waives the attorney-client and work product privileges. It appears that no court in this Circuit has yet addressed this particular question. Yet courts in other Circuits have considered a similar one: whether filing privileged documents as exhibits to a dispositive motion—vice a complaint—accomplishes waiver. *See In re Perrigo Co.*,

128 F.3d 430 (6th Cir.1997); *Joy v. North*, 692 F.2d 880 (2d Cir.1982).

In *Perrigo*, a corporation had moved to dismiss a shareholder derivative action pursuant to a Michigan statute; the statute authorized dismissal on the recommendation of a majority of disinterested, independent directors. 128 F.3d at 432–33. With the assistance of counsel, Perrigo's lone disinterested, independent director had prepared a report summarizing the findings of his investigation into the plaintiffs' allegations, and Perrigo filed this report under seal as an exhibit to its motion. *Id.* at 433. On a petition for writ of mandamus, the Sixth Circuit Court of Appeals approved the district court's holding that Perrigo had waived the attorney-client and work product privileges as to the shareholder plaintiffs, who would need access to the sealed report to contest Perrigo's motion. *See id.* at 439. But it also determined that Perrigo had not waived these privileges as to the general public merely by filing its report in the district court. *Id.*

By contrast, in *Joy*, the Second Circuit Court of Appeals declared that "the submission of materials to a court in order to obtain summary judgment utterly precludes the assertion of the attorney-client privilege or work-product immunity." 692 F.2d at 894. There, as in *Perrigo*, a corporation filed a privileged report as a sealed exhibit to its motion to dismiss a derivative action. *Id.* at 884. After affording the shareholder plaintiffs some discovery—but not access to the report—the district court granted summary judgment for the corporation. *Id.* In an opinion that also addressed the merits, the Court of Appeals reversed the district court's order sealing the report. *Id.* It observed that "[a]n

---

which is an exhibit to a pleading is a part thereof for all purposes." FED.R.CIV.P. 10(c). Yet documentary exhibits, like portions of the

complaint itself, may remain under seal even though the balance of the complaint is publicly available.

adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny. We simply do not understand the argument that derivative actions may be routinely dismissed on the basis of secret documents." *Id.* at 893. Consequently, the court held that "a motion for judgment based on [privileged materials] waives the privilege." *Id.* In subsequent decisions, the Court of Appeals has clarified that waiver occurs only if the privileged materials' contents are placed "at issue." *See Lugosch v. Pyramid Co.,* 435 F.3d 110, 125 (2d Cir.2006) (remanding for determination whether sealed documents filed with summary judgment motion were privileged and if so, whether defendants had waived the privilege(s) by placing documents' contents at issue); *see also United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir.1995) ("We think that the mere filing of a paper or document with the court is insufficient to render that paper ... subject to the right of public access.").

Notably, while the *Perrigo* and *Joy* courts disagreed as to whether the filer had waived its privileges as to the public at large, both courts found waiver as to the opposing party. Yet because these cases and their progeny reflect a fundamentally different approach to waiver than that adopted by our Court of Appeals, they offer only limited guidance here.

 In this Circuit, "short of court-compelled disclosure, or other equally extraordinary circumstances, [courts should] not distinguish between varying degrees of 'voluntariness' in waivers of the attorney-client privilege." *In re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir.1989) (citation omitted). In *Sealed Case,* the government sought privileged documents from a company, arguing that because a company employee had disclosed one of the documents during a routine audit, the company had waived its privilege. *Id.* at 977, 980. The

company characterized the disclosure as "inadvertent" rather than voluntary, but the Court of Appeals refused to recognize any such distinction, holding that any non-court-compelled disclosure was voluntary and waived the privilege. *See id.* at 980.

In *Cobell v. Norton,* 213 F.R.D. 69 (2003), this Court applied the Court of Appeals' bright-line rule but found no waiver where defendants surrendered privileged materials to a special master. 213 F.R.D. at 74. The special master had "obtained these [privileged] memoranda under the authority vested in him by an order of this Court," which this Court analogized to "the receipt of documents by the Court for *in camera* review." *Id.* at 75. The central issue, this Court reasoned, was "whether the disclosure ... to the [special master] was judicially compelled." *Id.* at 74. (citing *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington,* 103 F.R.D. 52, 63 n. 2 (D.D.C.1984) (Dwyer, M.J.)). Given that disclosure had occurred pursuant to a court order, the Court found that disclosure had been compelled, and thus that the defendants had not voluntarily waived their privilege. *Id.* at 75.

This Court found support for its conclusion in cases from this and other Circuits. *See SEC v. Lavin,* 111 F.3d 921, 932 (D.C.Cir.1997) (no waiver where tapes were provided in response to Federal Reserve's invocation of its statutory examination powers); *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir.1989) (no waiver where survey's use in prior judicial proceeding was compelled by court order, over privilege-holder's objections); *Schaffer v. Below,* 278 F.2d 619, 628 (1960) (no waiver where attorney-client correspondence was provided in response to a court-ordered subpoena). *See also Transamerica Computer Co. v. IBM Corp.,* 573 F.2d 646, 651 (9th Cir.1978) ("a party does

not waive the attorney-client privilege for documents which he is *compelled* to produce").

Here, the bright-line rule in *Sealed Case* dictates an outcome very different from that in *Cobell:* no compulsion whatever is evident on this record. Under the FCA, a *qui tam* relator must provide the government with "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses," and his "complaint shall be filed in camera" with the district court. 31 U.S.C. § 3730(b)(2) (2008). Thus, the statute compelled relators to turn over the complaint, confidential disclosure statement, and sealed exhibits to the government, but it obliged them to file only *their complaint* with the Court. At no time did this Court direct or even encourage relators to file their confidential disclosure statement and supporting materials on the docket. Rather, relators voluntarily elected to file these additional materials. Absent any statutory or judicial compulsion, this disclosure must be construed as a voluntary waiver of any privilege that might otherwise have protected the materials disclosed. *See In re Sealed Case,* 877 F.2d at 980. *Cf. Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349, 1356 (5th Cir. 1983) (work product immunity waived when attorney voluntarily discloses the protected information to the court).

■■■ Documents filed on a court's docket presumptively reside in the public domain. *Johnson v. Greater Southeast Cmty. Hosp. Corp.,* 951 F.2d 1268, 1277 (D.C.Cir.1991). While a party in litigation may in some circumstances file privileged attorney-client communications or work product without forfeiting those privileges, to preserve them, he must assert the applicable privilege(s) from the outset and must yield the materials only at the court's direction. *See, e.g., Cobell,* 213 F.R.D. at 75; *Shields,* 864 F.2d at 382; *Transamerica*

*Computer Co.,* 573 F.2d at 648–51. Here, relators' filing of the allegedly privileged materials on the Court's docket, without any privilege assertion and absent any external compulsion, was inconsistent with the bedrock principle that a privilege "must be jealously guarded ... lest it be waived." *See In re Sealed Case,* 877 F.2d at 980. Relators did originally file these materials under seal, but in this Court's calculus, this minimal precaution does not counterbalance their imprudence in filing the materials at all. They insist their amended complaint, alone, satisfies the Federal Rules' pleading requirements. (Opp'n at 9–10.) Thus, relators acknowledge they had no need to file additional materials. To the extent they intended the confidential disclosure statement and sealed exhibits to offer evidentiary support for their claims, this showing—made long before discovery could be expected to commence—was highly premature.

The Court concludes that by filing the confidential disclosure statement and exhibits along with their complaint, relators voluntarily waived any privileges that might have attached to these documents. *See In re Sealed Case,* 877 F.2d at 980. Consequently, their privilege-based objections to Oce's motion to unseal must be disregarded. The third *Hubbard* factor— "the fact that someone has objected to disclosure, and the identity of that person"—thus does not weigh against lifting the seal. *See EEOC v. Nat'l Children's Ctr.,* 98 F.3d 1406, 1409 (D.C.Cir.1996).

### (4) Strength of asserted property/privacy interests

Other than relators' privilege assertions, addressed above, neither party argues that either property or privacy interests are at stake on this motion. Thus, this factor weighs neither for nor against unsealing the record.

### (5) Possibility of prejudice

 Unsealing the full record in this case poses the potential for prejudice to two parties: the United States, and relators. First, the possibility of prejudice to the United States is negligible. The government has requested that all materials other than the amended complaint remain sealed. (*See* Weinstein Ltr., Ex. A to Defs.' Mot.) Yet it offered no rationale for this request, and in any event, Oce asks the Court to unseal only relators' filings— not the government's. Moreover, neither the government, itself, nor the relators in their opposition, have offered any theory as to how disclosure of relators' filings might prejudice the government. Hence, the Court finds no material possibility of prejudice to the United States.

 Second, and similarly, aside from any impact on their privilege claims, canvassed above, the possibility of prejudice to relators is slight. As another district court has observed, once relators' identities have been revealed, as is true here, "there is no justification for keeping [d]efendant[s] in the dark concerning [their] factual allegations." *United States ex rel. Burns v. A.D. Roe Co.,* 904 F.Supp. 592, 594 (W.D.Ky.1995). Further, neither relator remains an Oce employee, so workplace discrimination and harassment will not follow from disclosure of the sealed materials. Finally, the substance of the sealed documents, if not the documents themselves, will likely be discoverable. For example, even if work product immunity protects the spreadsheets listed as exhibits 1–3 from disclosure, (*see* Opp'n at 6–7), relators would very likely be required to provide factual details of the particular transactions underlying their allegations in responding to interrogatories. Hence, as with the government, the possibility of prejudice to relators does not weigh against unsealing the record here.

### (6) Purpose of sealed materials' introduction

 Finally, Oce contends relators introduced the sealed documents "for the purpose of prosecuting a case against" it; thus, Oce reasons, unsealing is necessary to enable it to prepare an adequate defense. (Defs.' Mot. at 8.) Oce paints with a broad brush: at some level, virtually every document a plaintiff introduces in litigation aims to further prosecution of his claims. Yet relators have proposed no alternative explanation for the materials' introduction. Indeed, while they presumably drafted their disclosure statement and compiled the attached exhibits for the government's benefit, *see* 31 U.S.C. § 3730(b)(2) (2008), their purpose in filing these documents with the Court remains a mystery. Accordingly, this factor weakly favors lifting the seal.

In sum, having applied the six-factor analysis of *United States v. Hubbard,* 650 F.2d 293, 314 (D.C.Cir.1980), the Court finds that three factors favor unsealing, while none counsel against. Thus, in accordance with the "strong presumption in favor of public access to judicial proceedings," *Johnson,* 951 F.2d at 1277, it is hereby

ORDERED that all documents filed by relators in this action, to include all attachments to their original complaint [1], shall be unsealed. Filings by the government, other than its notice of non-intervention [22], shall remain under seal.

SO ORDERED.