**In re ANTHRACITE COAL ANTITRUST LITIGATION.**

**MDL No. 293.**

United States District Court,
M. D. Pennsylvania.

Jan. 25, 1979.

Michael M. Baylson, Duane, Morris & Heckscher, Philadelphia, Pa., for Allied Chemical Corp. and on behalf of all plaintiffs.

Edward F. Mannino, Philadelphia, Pa., Liaison Counsel, for all defendants.

Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Greenwood Stripping Corp., Greenwood Min. Co. and Lehigh Navigation-Dodson Co.

## OPINION

MUIR, District Judge.

These related anthracite coal antitrust actions have been assigned to the undersigned judge for the purpose of conducting pre-trial proceedings. On December 22, 1978, the Plaintiffs filed a joint motion to compel all Defendants to answer the Plaintiffs' joint second wave interrogatories accompanied by a brief. On December 29, 1978, the Defendants filed a joint responsive brief and Defendants Greenwood Stripping Corp., Greenwood Mining Company, and Lehigh Navigation-Dodson Company filed a supplemental brief. On January 15, 1979, the Plaintiffs filed a reply brief and an affidavit of counsel pursuant to Local Rule of Court 301.02(e) indicating that counsel had met in an attempt to resolve the issues raised in the motion and that no agreement had been reached.

The instant motion relates to a set of interrogatories served by the Plaintiffs on the Defendants on November 4, 1978. The Defendants filed joint objections to those interrogatories on December 4, 1978 assert-

ing as general objections that the interrogatories related to privileged information, that they were not relevant nor reasonably calculated to lead to the discovery of admissible evidence, that they were overly broad and thus burdensome, and that they were repetitious of earlier sets of interrogatories and thus represented harassment of the Defendants. Specific objections were also interposed to definitions used by the Plaintiffs and to each interrogatory. At the time of the filing of the motion, the Plaintiffs asserted that interrogatories 1 through 7, 10, 11, 13, 14, and 16 had not been answered. The Defendants, apparently without waiving their objections, filed answers to a number of those interrogatories and indicated in their responsive brief that the only issues before the Court related to interrogatories 3, 4, (in part), 5, 6, and 16. In their reply brief, the Plaintiffs state that they have accepted certain answers to the interrogatories from the Defendants and assert that interrogatories 2, 4, 5, and 16 are the ones which should be considered by the Court. Thus, the parties are in substantial agreement with respect to what interrogatories have not yet been answered to the Plaintiffs' satisfaction with the exception of whether interrogatory No. 2 or interrogatory No. 3 is at issue. The Court will deal with each interrogatory *seriatim*.

■ Interrogatory No. 2 is directed to Defendants Lehigh Valley Coal Sales, Pagnotti Enterprises, Inc., Pagnotti Coal Company, Jeddo-Highland Coal Company, Lehigh Valley Anthracite, Reading Anthracite Coal Company, Reading Anthracite Company, Joseph Frank, and Carl Tomaine and requested those Defendants to set forth the extent of their knowledge of a meeting held at Brutico's Restaurant in Old Forge, Pennsylvania in 1966 or 1967 relating to discussions about the price of anthracite coal, agreements to raise or stabilize that price, agreements to adhere to price circulars, and discussions about competition and market conditions. The Defendants were also requested to identify the source of their knowledge. The Defendants objected to the interrogatory on the ground that it is overbroad and not in conformance with this

Court's opinion in the above cases dated September 6, 1978 which stated that such information should normally be acquired by way of deposition rather than by means of a written interrogatory. They also asserted that it was repetitive of interrogatories Nos. 5 and 11 of the Plaintiffs' joint first wave interrogatories. However, they stated that an answer conforming with this Court's opinion of September 6, 1978 would be made. The Plaintiffs moved to compel an answer to that interrogatory and, in their reply brief, assert that the Defendants to whom it was directed should be required to give a further answer. The Defendants' joint memorandum does not contain any argument opposing the Plaintiffs' contentions and the Defendants asserted that interrogatory No. 2 was not in issue. It is the Court's view that it is justifiable to draw the inference based upon the Defendants' lack of argument with respect to Interrogatory No. 2 that they do not now object to answering that interrogatory. Therefore, the Plaintiffs' motion to compel discovery will be granted with respect to Interrogatory No. 2.

In the responsive brief, the Defendants stated that interrogatory No. 3 was at issue and directed substantial legal argument in support of their objection to that interrogatory. However, in the reply brief, the Plaintiffs make no mention of interrogatory No. 3 and it is not included in the Plaintiffs' list of interrogatories still at issue. Therefore, the Court concludes that the Plaintiffs no longer seek to compel an answer to interrogatory No. 3 and that interrogatory will not be discussed.

Interrogatory No. 4 requested the Defendants to identify any person retailed (sic) by them who had received information from Charles W. Dilley, Foster F. Frable, Joseph Frank, James Tedesco, Raymond H. Cairnes, Eugene Bourger, William R. Dougan, Carl J. Tomaine, Ronald Ulmer, Joseph Fauzio or William Fauzio relating to the allegations in the criminal indictments handed down in *United States v. Blue Coal Corp.*, and *United States v. Gillen*, 458 F.Supp. 887 (M.D.Pa.) and the allegations

contained in Plaintiffs' complaints. The Defendants originally objected to the interrogatory on the grounds that it is broad, vague, ambiguous, incapable of a proper response, an infringement upon the attorney-client and work product privileges, burdensome, and repetitious. In their brief, Plaintiffs assert that interrogatory No. 4 does not seek the content of any communications between any of the listed individuals and counsel or other persons employed or retained by the Defendant corporations but rather the identity of those individuals. Subsequent to the filing of the Plaintiffs' brief, the Defendants supplied a partial answer to interrogatory No. 4 which the Plaintiffs contend was inadequate. Defendant Glen Burn Colliery, Inc. replied that only outside counsel had received such information. Defendants Greenwood Stripping Corp., Greenwood Mining Company, and Lehigh Navigation-Dodson replied that only attorneys employed for the purposes of preparing this litigation had received such communications. The answer of the remaining Defendants was identical to that of Glen Burn. Plaintiffs assert that a full answer to the interrogatory would supply the identity of the specific persons who attained such information and from whom that person obtained it. It is the view of the Court, however, that the answer supplied by the Defendants meets the terms of Interrogatory No. 4. That interrogatory requested only the identity of any person receiving such information. Plaintiffs have not contended that they are unaware of the identity of outside counsel for the Defendants and interrogatory No. 4 does not request the answering Defendants to specify from which of the individuals listed in that question such information was obtained. Therefore, because the answer supplied by the Defendants is sufficient, a further answer will not be required.

Interrogatory No. 5 is similar to interrogatory No. 4 except that it requests the Defendants to state in detail the substance of such communications between the persons identified in Interrogatory No. 4 and anyone retained or employed by the Defendants. The Defendants objected to this interrogatory asserting that it is overly broad, vague and ambiguous and that it seeks privileged information. In their brief, the Defendants advance two main arguments in support of their position that interrogatory No. 5 need not be answered. First, they assert that to the extent that interrogatory No. 5 requests disclosure of communications between corporate counsel and corporate employees, it infringes upon the attorney-client privilege. Second, they assert that to the extent that it seeks disclosure of information gathered from other persons by the attorneys retained by the Defendants to prepare this litigation, it is protected by the work product doctrine, see F.R.Civ.P. 26(b)(3), and that the Plaintiffs have not met their burden under the rule of demonstrating that good cause exists for the production of such information. In order properly to analyze what information is being requested by interrogatory No. 5, the Court will separate that interrogatory into three basic components and deal with the Defendants' objections as they relate to each.

First, interrogatory No. 5 seeks details of discussions between the persons named in Interrogatory No. 4 and any other person employed or retained by the Defendants including but not limited to counsel. Excluding counsel, therefore, Interrogatory No. 5 simply requests the Defendants to relate the substance of communications between the individuals listed in Interrogatory No. 4 and corporate officers or employees. Clearly, neither the work product doctrine nor the attorney-client privilege relates to such discussions. All Defendants indicated in response to Interrogatory No. 4, however, that such information was communicated by Messrs. Dilley, et al. only to counsel. Accepting this response as true, there are no communications which are the subject of Interrogatory No. 5 in the first category delineated by the Court. The Plaintiffs contend that it seems inconceivable that the Defendants have not had communications with the officers or employees named in Interrogatory No. 4 with respect to the criminal and civil allegations brought

against them except through outside counsel. However, that answer has been supplied by the Defendants and the Court is constrained to accept it as being tendered in good faith in discovery proceedings. The Court does express its view, however, that any communications between the individuals listed in Interrogatory No. 4 and anyone employed by the Defendants other than counsel is, of course, not subject to a claim of privilege and is therefore properly discoverable.

 The second category of communications to which Interrogatory No. 5 refers relates to those between the individuals listed in Interrogatory No. 4 and counsel for their respective corporations. These are the only communications to which the claim of attorney-client privilege could adhere because although such a privilege is available to a corporation, the existence of the privilege depends upon whether a particular communication was made to counsel for the purpose of seeking advice or assistance and whether the communication was made by the corporation. *See City of Philadelphia v. Westinghouse Electric Corp.,* 210 F.Supp. 483 (E.D.Pa.1962); *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357 (D.Mass.1950). Thus, for example, communications between individuals employed by or associated with Glen Burn Colliery would not be subject to the attorney-client privilege if they were made to counsel for Reading Anthracite Coal Company rather than counsel for Glen Burn. With respect to the information requested by Interrogatory No. 5, the attorney-client privilege applies only to communications from corporate employees who are in a position to control or take substantial part in decisions about any action the Corporation may take on advice of an attorney to that corporate employee. *See City of Philadelphia v. Westinghouse Electric Corp.,* 210 F.Supp. 483 (E.D.Pa. 1962); *see also Natta v. Hogan,* 392 F.2d 686 (10th Cir. 1968); *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136 (D.Del.1977); *Honeywell, Inc. v. Piper Aircraft Corp.,* 50 F.R.D. 117 (M.D.Pa.1970) (Sheridan, C. J.); *American Cyanamid Co. v. Hercules Powder Co.,* 211 F.Supp. 85 (D.Del.1962). The

burden of demonstrating such a privilege rests with the party who asserts it. *See United States v. 58.16 Acres,* 66 F.R.D. 570, 572 (E.D.Ill.1975).

It is the view of the Court that based upon the documents which have been filed with respect to the instant motion, no intelligent decision on whether the attorney-client privilege protects any or all of the communications sought to be discovered by Interrogatory No. 5 can be made. The Plaintiffs assert that because all of the individuals named in Interrogatory No. 4 except Raymond Cairnes and Ronald Ulmer have had separate counsel represent them at their depositions the knowledge of the corporate Defendants obtained from any of those individuals could not have been so obtained through a privileged communication. The Plaintiffs seem to be contending that even if a corporate officer who is a member of the "control group" communicates information to an attorney for the corporation in order to seek that attorney's advice or assistance in making a corporate decision, the attorney-client privilege does not protect such a communication where the officer also has retained private counsel to present him. This assertion ignores the fact that a person may be both an individual and a corporate officer. It is the view of this Court that both types of communications are privileged, with the privilege of corporate communications belonging to the corporation and the privilege with respect to private communications belonging to the individual. Because of such an assertion, however, the Plaintiffs have not identified in their moving papers the corporations with which each of the individuals named in Interrogatory No. 4 is affiliated nor have they argued that any of those individuals does not belong to a "control group" so that their communications to their corporate attorneys would not be privileged. The Defendants, on the other hand, similarly failed to make such identification and do not indicate whether all of the communications between counsel and the individuals listed in interrogatory No. 4 took place only within the Defendant organizations or whether

there was information communicated by an officer of one corporation to counsel for another. Because of the lack of factual information, therefore, the Court is constrained to set forth a general principle relating to the issues raised by the parties for their guidance. It is the view of the Court that the attorney-client privilege may be asserted by the Defendant corporations in response to Interrogatory No. 5 only with respect to communications between members of the "control group" of a particular Defendant organization and counsel which has been retained by that organization. The Court agrees with the Defendants that such communications are not properly discoverable by the Plaintiffs. Because the Defendants bear the burden of establishing the existence of the privilege, the Court will direct them to identify insofar as possible those communications to which they claim the privilege applies and identify the speaker, the capacity in which he acted, and the name of the law firm with which he communicated. The Court is in agreement with the Plaintiffs that any facts so communicated which are within the knowledge of corporate officers and which have been gained in the scope of their corporate employment but not revealed to the Plaintiffs are proper subjects of discovery. This Court has indicated in earlier opinions that failure to disclose such facts may result in the imposition of discovery sanctions. Nevertheless, the communication of those facts by members of a corporation's control group to its counsel need not be revealed.

The third category of communications to which interrogatory No. 5 relates are communications between officers or employees of one corporation and outside counsel for another Defendant who do not also represent the corporation with which the first party is affiliated. The Defendants have asserted that such communications, because they have come about in the course of the preparation of their defense to these actions, are protected by the work-product doctrine as set forth in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and F.R.Civ.P. 26(b)(3). That latter provision states that a party may obtain

discovery of documents and tangible things otherwise properly discoverable and prepared in anticipation of litigation or for trial by or for another party or that party's representative only upon a showing that the party seeking such discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. The Plaintiffs assert, and the Defendants dispute, that a proper showing of need and inability to obtain information by other means has been made in this case and that any claim of work-product should not be sustained by this Court.

■ Assuming that counsel for the Defendants have obtained information from the witnesses listed in Interrogatory No. 4 as part of their preparation for trial rather than through an attorney-client relationship and that the existence of such communications has been revealed by the Defendants' answer to interrogatory 4, the Court must determine whether the requirements of Rule 26(b)(3) have been met by the Plaintiffs. First, the Court notes that the first sentence of that paragraph states that a party may obtain discovery of documents and tangible things otherwise properly discoverable and prepared in anticipation of litigation by making the showing required by the rule. Therefore, the Rule is not by its terms applicable to all communications between an attorney preparing for trial and a non-client but only to documents and other tangible things which would normally be written or recorded statements of the non-clients. The Court is of the view, however, that the same standards set forth in Rule 26(b)(3) should be applied both to communications of information and tangible recordations of such information. If the work product doctrine were not applied to oral communications, two other means of treating them immediately come to mind. First, such communications could be regarded as any other facts communicated to the corporation and within its knowledge so that disclosure of them would be required simply upon a showing of relevancy. Such a char-

acterization would have the effect of ignoring the manner in which such information was collected, namely by the corporation's counsel in preparation of litigation or trial. Second, such communications could be treated as absolutely privileged and therefore not discoverable. The major drawback to such treatment would be, however, that it would encourage attorneys not to make written records of any interviews with non-clients in order to avoid the possibility that such memoranda would be subject to disclosure upon a showing of substantial need for the material by opposing counsel together with a demonstration that similar information cannot be reasonably obtained by other means. Therefore, the Court will treat both oral communications of information and written statements as identical for purposes of determining whether the work-product doctrine applies in this case. Of course, mental impressions or conclusions of counsel are not discoverable even if an entitlement to work product is shown. Thus, the Court's ruling with respect to oral communications is limited to those about which counsel has a definite recollection and can fairly be characterized as admissions. Counsel will not be required to give a conclusion, opinion or impression about what was said if he has no definite recollection.

Any decision by this Court on whether the work product doctrine has some applicability to interrogatory No. 5 is rendered extremely difficult by the lack of factual information before the Court. In a typical case involving a request for trial preparation materials under Rule 26(b)(3), the Court has been advised of the precise nature of the statements sought to be discovered and the contents thereof so that consideration can be given to the question of whether the information is relevant to the moving party's case and whether he is unable to obtain it by other means. Interrogatory No. 4, which is the Plaintiffs' only identification of the materials sought to be discovered, is extremely broad in that it relates to any communications between a large number of individuals and at least three different law firms concerning any matter which might have been raised in either of two criminal indictments or in any of the six complaints which are still pending in these civil actions. The Court cannot conclude that the Plaintiffs have substantial need for all such materials. On the other hand, the burden of initially asserting the work product doctrine rests with the party seeking to prevent discovery. In this case, the Defendants have not identified to the Court whether any such communications occurred between Defendants' counsel and persons identified in interrogatory No. 4 who are not their clients nor have they submitted to the Court for *in camera* inspection the substance of any such communications so that the Court may determine whether the Plaintiffs have made a sufficient showing with respect to that communication. It is the view of the Court that the Plaintiffs have made a prima facie showing of both substantial need and undue hardship but that until some examination of the materials sought by the Defendants to be protected by the work-product doctrine has been made, the Court cannot enter an order which is fair to both parties. Consequently, the Court will order such submission to take place.

It is the view of the Court that if the dispute as to whether the work product doctrine applies to any or all of the communications requested to be disclosed by interrogatory 5 can be resolved by counsel, such resolution would be preferable to court intervention. The Court indicates to counsel that based upon the existing body of case law, it is clear that with respect to the central allegations of the Plaintiffs concerning the existence of a price-fixing conspiracy, substantial need for evidence on that point from the individuals listed in interrogatory No. 4 has been shown based upon the relationship of such evidence to the Plaintiffs' claims. Further, at least a prima facie showing of inability to obtain that information by other means has been made based upon the constant invocation of the Fifth Amendment by those individuals. Other courts have permitted counsel to discover witnesses' statements obtained in preparation of trial although those witness-

es are available for depositions where, for example, the statements were made by the only eyewitnesses to an accident, they were recorded within a short time following the existence of the accident, and the witness has had some lapse of memory. _See Teribery v. Norfolk & Western R. Co._, 68 F.R.D. 46 (W.D.Pa.1975); _Hamilton v. Canal Barge Co._, 395 F.Supp. 975 (E.D.La.1974). The Courts have also indicated that good cause has been shown for discovery if the party whose statement is the subject of the discovery request is identified with the opposing party and shows some reluctance to testify. _See, e. g., Southern R. Co. v. Lanham_, 403 F.2d 119, 128–29 (5th Cir. 1968). In this case, it has not been simple reluctance on the part of the persons listed in ¶ 4 to testify which has precluded the Plaintiffs from obtaining evidence relating to their claims. Rather, those witnesses have refused to testify altogether. The Court does not believe that a transcript of immunized testimony given by certain of the witnesses at the trial of _United States v. Gillen_, 458 F.Supp. 887 (M.D.Pa.), is the substantial equivalent of a voluntary statement made to counsel acting for another party. The cases cited by the Court have held that the deposition of the same witness taken long after an accident has occurred is not the substantial equivalent of a statement made immediately after such occurrence simply because of the fact that memories fade after the lapse of a period of time. Thus, the Court is indicating to counsel that if statements have been made to counsel for one of the Defendant corporations by a person who does not enjoy an attorney-client relationship with that counsel and who has been identified in interrogatory No. 4 and the substance of that statement relates to a crucial portion of the Plaintiffs' claim, the Court will in all probability direct such information to be disclosed to the Plaintiffs under Rule 26(b)(3). If there are such statements about which counsel cannot agree, however, then the Court will conduct an _in camera_ inspection of the contents of those statements and make a ruling. All such statements should be submitted to this Court within 15 days of the date of this Opinion. If such statements are disclosed to counsel for the Plaintiffs during negotiations, no use shall be made of them in these or any other proceedings and they should not be disclosed to the parties unless the Court rules that the Plaintiffs are entitled to them under Rule 26(b)(3).

■ The next interrogatory which is the subject of the Plaintiffs' request is interrogatory No. 6. That inquiry requests the Defendants to state in detail the substance of each report or factual representation made to them regarding the knowledge of any individual identified in interrogatory 4 regarding the matters specified in that interrogatory. Interrogatory No. 6 differs from interrogatory No. 5 in that it is not limited to statements made by the persons identified in Interrogatory No. 4 but encompasses statements originating from other sources. Again, three possibilities exist with respect to the information requested, namely that it has been communicated merely to a corporate officer, in which case it is properly discoverable, that it has been revealed in the course of attorney-client discussions, in which case it is not discoverable, or that it is work product. Again, as with interrogatory 5, the Court does not possess sufficient information to make a meaningful ruling on that question at this time. Therefore, Interrogatory 6, to the extent that it encompasses any information not covered by interrogatory 5, will be subject to the same ruling.

■ Finally, the parties are in dispute with respect to whether interrogatory No. 16 should be answered. That question asked the Defendants to state whether they have caused an investigation or inquiry into the activities of any individuals identified in Interrogatory 4 to be made regarding any matters described in that interrogatory. The Defendants responded by incorporating by reference their objections to interrogatory No. 4. However, as the Plaintiffs correctly point out, the question seeks only a "yes" or "no" answer as to whether such an investigation was made and does not seek any substantial information. Whether such an investigation has been made may be of

**524**

some relevance in this litigation. For example, disputes may arise in the future as to whether either the Defendants' answers to the Plaintiffs' complaints or their responses to discovery requests are proper under the Federal Rules because of their lack of investigation into the facts underlying the assertions made. Therefore, the Court will require that the defendants respond to interrogatory No. 16 by way of a "yes" or "no" answer.

The Defendants have requested an award of costs and expenses incurred in preparing their response to the Plaintiffs' motion to compel discovery. However, because the Court has granted that motion in part, because after the filing of the motion the Defendants voluntarily answered a number of the interrogatories, and because the positions of both sides have substantial merit, the Court will not award expenses to either party with respect to the preparation of or opposition to this motion.