McRAE, Presiding Justice,
Dissenting.
¶ 43. This interlocutory appeal has been before this Court for over four years concerning a pre-trial discovery matter. One can only wonder if the delay has been intentional. In the present proceeding, the case has flipped twice. Justice Cobb won back the majority recently after a Justice recused himself. It is of the utmost importance that Article 6, Section 165 of the Mississippi Constitution be utilized here where so few Justices are participating in the case. Under that provision, the Governor is given power to appoint a Special Justice “to preside at such term or during such disability or disqualification in the place of the judge or judges so disqualified.” Miss. Const, art. 6, § 165.
¶44. The majority erroneously finds that the thirty documents, which the trial judge reviewed in camera and ordered production, are protected by the attorney client and work product privileges. The majority’s findings are repugnant to the spirit of the privileges and go against the very purpose of privilege protection. The trial court’s order of production should be affirmed. For this reason, I dissent.

FACTS

¶ 45. The majority fails to include many facts which are pertinent to this case. For this reason, I will give a short rendition of those facts which were so cleverly deleted from its opinion. This case involves the husband of an attorney for a litigant who allegedly accessed her phone records and gave out the information to the attorney for the other side of the suit. The defendants to this suit now assert the attorney client privilege, the work product privilege, and the common interest privilege.
¶ 46. In 1994, during the tobacco litigation, Cynthia Langston (Langston) was involved in a heated divorce proceeding with Mike Miller (Miller). Miller worked in management for Bell South Telecommunications (Bell South) in Jackson, Mississippi. In the past, George Hewes’s (Hewes) daughter had worked under Miller at Bell South.
¶ 47. After the anonymous “haunted friend” letter came to light, Langston discovered that Hewes and Miller had met on several occasions to discuss what both describe as possible ex parte meetings between Langston and the Honorable Billy Joe Landrum (Judge Landrum), the trial judge in the tobacco lawsuit.[4] Evidence on *811 the record reveals a sequence of events, communications, and conversations concerning Miller and Hewes’s contacts with one another.
¶ 48. In 1996, while Miller and Lang-ston were going through a divorce, Miller contacted Hewes to discuss information “he might be interested in.” When Hewes, Miller, and Charles Adams, met for the first time they all claim to have had a thirty (80) to forty-five (45) minute conversation in complete “hypotheticals.” On the record, Hewes and Miller denied having any further contact with one another in 1996, besides a happenstance meeting in downtown Jackson.
¶ 49. Hewes admitted to contacting Miller in 1997 and having lunch with him to follow up on their previous discussion. At this time, Miller told Hewes about his divorce settlement and how he was not supposed to interfere with Langston’s personal or business life. Thereafter, Hewes volunteered to review the settlement agreement. After this, the two claim to have had no further contact.
¶ 50. The thirty documents at issue reveal a quite different scenario than that claimed by Hewes and Miller. The in camera documents reveal at least seventy-six and one tenth (76.1) hours billed to Brown and Williamson Tobacco Co. (B & W) concerning contacts, discussions, and information gathered from Miller. Numerous telephone conversations are contained in the documents and other notations which may also involve information exchanged between the two. In 1996 alone, when allegedly only one meeting took place, nine notations appear in Hewes’s billing statements to B & W concerning contacts with Miller and discussions concerning information related to Miller. This is five more entries than claimed by Hewes. Those nine entries in 1996 constituted thirty and one half (30.5) billed hours to B & W. Furthermore, in 1997, Hewes’s billing statements include ten entries concerning contacts, conversations, and discussions with Miller totaling thirty and one half (30.5) billed hours to B & W. A total of thirty-five (35) entries constitute seventy-six and one tenth (76.1) billed hours to B & W.
¶ 51. During this two year period when the alleged contacts between Miller and Hewes took place, Miller admits to accessing the phone records of Langston. He even admits that after he was terminated by Bell South, the accessing of Langston’s telephone records “greatly diminished.”

DISCUSSION

I. DID THE CIRCUIT COURT ERR BY CONDUCTING AN IN CAMERA REVIEW OF THE DOCUMENTS IN QUESTION?

¶ 52. Even though the majority addresses the issue of whether the circuit court erred by conducting an in camera review of the documents in question, it fails to state the accurate standard to be applied by the trial court in making its decision with regard to whether in camera review is appropriate. Hewes and B & W assert that United States v. Zolin, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) requires that “the party seeking discovery must make a prima facie showing of a crime or fraud before the trial court can ever review the privileged documents in camera.”[5] The majority agrees and finds that under Zolin in camera review is appropriate “[ojnce a party seeking disclosure of allegedly privileged materials *812 sets forth a prima facie case that the crime-fraud exception applies.... ” This statement is entirely incorrect as Zolin only requires that a reasonable good faith belief be shown that the crime fraud exception applies in order to invoke in camera review.
¶ 53. In Zolin, the United States Supreme Court addressed “whether in camera review at the behest of the party asserting the crime-fraud exception is always permissible, or, in contrast, whether the party seeking in camera review must make some threshold showing that such review is appropriate.” 491 U.S. at 570, 109 S.Ct. at 2630. The Supreme Court held that:
In fashioning a standard for determining when in camera review is appropriate, we begin with the observation that “in camera inspection ... is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure.” Fried, Too High a Price for Truth: The Exception to the Attorney-Client Privilege for Contemplated Crimes and Frauds, 64 N.C.L.Rev. 443, 467 (1986). We therefore conclude that a lesser evidentiary showing is needed to trigger in camera review than is required ultimately to overcome the privilege. Ibid. The threshold we set, in other words, need not be a stringent one.
We think that the following standard strikes the correct balance. Before engaging in in camera review to determine the applicability of the crime-fraud exception, “the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person,” Caldwell v. District Court, 644 P.2d 26, 33 (Colo.1982), that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.
Once that showing is made, the decision whether to engage in in camera review rests in the sound discretion of the district court. The court should make the decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply....
The question remains as to what kind of evidence a district court may consider in determining whether it has the discretion to undertake an in camera review of an allegedly privileged communication at the behest of the party opposing the privilege
[[Image here]]
The answer to that question in the first instance must be found in Rule 104(a), which establishes that materials that have been determined to be privileged may not be considered in making the preliminary determination of the existence of a privilege
[[Image here]]
In sum, we conclude that a rigid independent evidence requirement does not comport with “reason and experience,” Fed. Rule Evid. 501, and we decline to adopt it as part of the developing federal law of evidentiary privileges. We hold that in camera review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception. We further hold, however, that before a district court may engage in in cam *813 era review at the request of the party opposing the privilege, the party must present evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception’s applicability. Finally, we hold that the threshold showing to obtain in camera review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged.
491 U.S. at 572-75, 109 S.Ct. at 2630-2632 (emphasis added). Nowhere in the Zolin opinion did the United States Supreme Court state that a prima facie showing of the crime fraud exception was required before a judge could review documents in camera. In fact the Court held that the lesser stringent requirement of “evidence sufficient to support a reasonable belief that the in camera review may yield evidence that establishes the exception’s applicability.” Id. at 575, 109 S.Ct. at 2632.
¶ 54. Reviewing the facts presented on the record, the circuit court did not abuse its discretion in conducing in camera review of the documents in question. There was ample evidence to support a finding that there was a reasonable belief that in camera review would result in evidence that supported the crime fraud exception. Just a few facts supporting in camera review include: (1) Meetings and conferences between Miller and Hewes which were paid for by B & W; (2) Discussions between Miller, Hewes, and Adams concerning alleged improper ex parte contacts; (3) Hewes’s Deposition Exhibit evidencing DayTimer Extracts which show appointments with Miller on four (4) separate occasions; (4) Miller and Langston’s bitter divorce proceedings; (5) Miller’s employment at Bell South; (6) Miller’s admission that he has accessed Langston’s telephone records in the past and has used Bell South employees to do it; (7) Testimony of the Bell South Director of Security and a Bell South Investigator concerning the accessing of Langston’s phone records; (8) Inconsistent affidavits provided by Miller; and (9) A very vague description provided by Miller and Hewes concerning their “hypothetical” first meeting that lasted thirty (30) to forty-five (45) minutes. After reviewing all of these facts, the circuit court judge certainly had a reasonable belief that in camera review would result in evidence that would support the crime fraud exception.
¶ 55. Although the majority also finds the circuit court judge had ample proof on which to order an in camera review of the documents, it fails to correctly cite the applicable standard of review which must be fulfilled before in camera review is appropriate. Under Zolin, the party seeking disclosure is not required to make a prima facie case of the crime-fraud exception in order to invoke in camera review, but only to reveal a “factual basis adequate to support a good faith belief by a reasonable person.” Id. at 572, 109 S.Ct. 2619 (quoting Caldwell v. District Court, 644 P.2d 26, 33 (Colo.1982)).

II. DID THE CIRCUIT COURT ERR IN GRANTING IN PART AND DENYING IN PART LANG-STON’S MOTION TO COMPEL CERTAIN DOCUMENTS WHICH DEFENDANTS HEWES AND B & W CLAIM ARE PROTECTED BY ATTORNEY-CLIENT PRIVILEGE, WORK PRODUCT DOCTRINE, AND COMMON INTEREST PRIVILEGE?

¶ 56. To effectively and fully review the issues presented, I must first state the law applicable to each privilege claim, then give an assessment of the circuit court’s ruling and my own in camera findings concerning the thirty (30) documents in question.
*814 ¶ 57. To set the stage, it must be remembered that the burden rests on the party resisting discovery to show that the material sought is privileged and/or that an attorney-client relationship exists. Haynes v. Anderson, 597 So.2d 615, 618 (Miss.1992) (citing Henderson v. Zurn Indus., Inc., 131 F.R.D. 560, 570 (S.D.Ind.1990)). See also United States v. Neal, 27 F.3d 1035, 1048 n.24 (5th Cir.1994)(eiting United States v. Harrelson, 754 F.2d 1153, 1167 (5th Cir.1985)).[6] However, when the party opposing the privilege claims an exception to the privilege applies, such as the crime fraud exception, the burden is placed on the opposing party to show that the exception is applicable. Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933); Neal, 27 F.3d at 1049; Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co., 953 F.2d 1004, 1008 (5th Cir.1992);. In re Intem’l Sys. & Controls Corp. Secs. Litig., 693 F.2d 1235, 1242 (5th Cir.1982).
A ATTORNEY-CLIENT PRIVILEGE
¶ 58. “The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.” Upjohn Co. v. United States, 449 U.S. 383, 388, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981) (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev.1961)). It is the purpose of the attorney-client privilege “to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of justice.” United States v. Zolin, 491 U.S. at 562, 109 S.Ct. at 2625-26. See Upjohn, 449 U.S. at 388, 101 S.Ct. at 682. As stated in Neal, where the privilege exists, it
protects communication from the client to the attorney made in confidence for the purpose of obtaining legal advice. It shields communications from the lawyer to the client only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney.
27 F.3d at 1048 (quoting Wells v. Rushing, 755 F.2d 376, 379 n.2 (5th Cir.1985) (citations omitted)). However, the Fifth Circuit has recognized that the privilege should not be broadened more than necessary. In United States v. Pipkins, 528 F.2d 559, 562-63 (5th Cir.1976), the Fifth Circuit stated that:
The attorney-client privilege, however, is not a broad rule of law which interposes a blanket ban on the testimony of an attorney. To the contrary,
... the privilege stands in degrogation of the public’s ‘right to every man’s evidence,’ 8 Wigmore (McNaughton rev. ed.1961) s 2192 at 70, and as ‘an obstacle to the investigation of the truth,’ Id., s 2291 at 554; thus, as Wigmore has said, ‘It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.’
In re Horowitz, 482 F.2d 72, 81 (2nd Cir.1973), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). See also *815 United States v. Goldfarb, 328 F.2d 280, 282 (6th Cir.1964), cert. denied, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964); Hogan v. Zletz, 43 F.R.D. 308 (N.D.Okl.1967); aff'd sub nom., Natta v. Hogan, 392 F.2d 686 (10th Cir.). The privilege does not embrace everything that arises out of the existence of an attorney-client relationship. United States v. Bartone, 400 F.2d 459, 461 (6th Cir.1968), cert. denied, 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969); United States v. Goldfarb, supra; Burlington Industries v. Exxon Corp., 65 F.R.D. 26, 40 (D.Md.1974).
¶ 59. Rule 502 of the Mississippi Rules of Evidence provides for a Lawyer-Client Privilege. Rule 502 states in pertinent part that:
(a) Definitions. As used in this rule:
(1) A “client” is a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services for him.
(5) A communication is “confidential” if not intended .to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or others reasonably necessary for the transmission of the communication.
(b) General Rule of Privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client....
(e) Who May Claim the Privilege. The privilege may be claimed by the client, his guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association or other organization, whether or not in existence. The person who was the lawyer or the lawyer’s representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client.
Miss. R. Evid. 502(a)(1) & (6),(b) & (c) (emphasis added). This Court has held that “the privilege is only a one-way street, for it belongs to the client only ... [and] ... [o]nly the client may invoke the privilege.” Barnes v. State, 460 So.2d 126, 131 (Miss.1984) (citing Bennett v. State, 293 So.2d 1, 5 (Miss.1974); Jones v. State, 65 Miss. 179, 183, 3 So. 379, 380 (1888); Caraway & Currie, Privileges, 48 Miss. L.J. 989, 1028-31 (1977)). (See In re: Grand Jury Subpoena, 220 F.3d 406, 408 (5th Cir.2000)).[7] The scope of the privilege has been described by this Court as “relatfing] to and covering] all information regarding the client received by the attorney in his professional capacity and in the course of his representation of the client.” Barnes, 460 So.2d at 131. See Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869, 875 (5th Cir.1991).
¶ 60. The attorney-client privilege is not without its limits and several exceptions make information otherwise protected discoverable. One such exception will be discussed below.

B. THE WORK PRODUCT DOCTRINE

¶ 61. There is a distinct difference between the attorney-client privilege and the *816 work product doctrine. The Fifth Circuit described this difference as:
The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties. The work product privilege, however, does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney’s trial preparations from the discovery attempts of an opponent.
Shields v. Sturm, Ruger & Co., 864 F.2d 379, 382 (5th Cir.1989) (citing United States v. American Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C.Cir.1980)). “The purpose of the work product privilege is to further ‘the interests of clients and the cause of justice’ by shielding the lawyers mental processes from his adversary.” In re Grand Jury Subpoena, 220 F.3d at 408 (quoting Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). “Work product only protects documents produced by or for an attorney preparing for litigation.” Dunn, 927 F.2d at 875. It has further been stated that:
The fact that litigation may still be a contingency at the time the document is prepared has not been held to render the privilege inapplicable, if the prospect of litigation is identifiable because of specific claims that have already arisen ... The test to be applies is whether, in light of the nature of the documents and the factual situation in this particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.
Haynes, 597 So.2d at 618 (quoting Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136, 151 (D.Del.1977)). In making the determination whether the documents in question were in fact prepared in anticipation of litigation, “courts should consider ‘the nature of the documents, the nature of the litigation, the relationship between the parties, and any other fact peculiar to the case.’ ” Id. at 619 (quoting Pete Rinaldi’s Fast Foods v. Great Am. Ins. Cos., 123 F.R.D. 198, 202 (M.D.N.C.1988); Carver v. Allstate Ins. Co., 94 F.R.D. 131, 134 (S.D.Ga.1982)).
¶ 62. Rule 26 of the Mississippi Rules of Civil Procedure controls the discovery of work product materials. Rule 26 states in pertinent part:
(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representatives of a party concerning the litigation.
Miss. R. Civ. P. 26(b) (emphasis added). Rule 26 creates an exception to non-discovery of such materials by creating a substantial need and undue hardship standard *817 for compelling production of documents. The “burden of showing that the materials that constitute work product should ... be disclosed is on the party who seeks their production.” Hodges, Grant & Kaufmann, 768 F.2d at 721 (citing Hickman, 329 U.S. at 511-12, 67 S.Ct. at 394, 91 L.Ed. at 462-63; In re Anthracite Coal Antitrust Litig., 81 F.R.D. 516, 522 (M.D.Pa.1979); 8 J. Wigmore, Evidence § 2023 at 196 (McNaughton rev.1961)). However, Rule 26 also places responsibility on the trial court when making such determinations to “protect against disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney or other representatives of a party concerning the litigation.” Miss. R. Civ. P. 26(b).
¶ 63. The Fifth Circuit in Intern’l Sys. & Controls, 693 F.2d 1235, addressed the substantial need and undue hardship exception to the work product doctrine. In doing so the court stated that
Some cases have found substantial need by emphasizing the importance of the documents themselves. One common justification for discovery is the claim which relates to the opposite party’s knowledge that can only be shown by the documents themselves. Bird v. Penn Central Co., 61 F.R.D. 43 (E.D.Pa.1973); Kearney & Trecker Corp. v. Giddings & Lewis, Inc., 296 F.Supp. 979, 983 (E.D.Wis.1969)
[[Image here]]
We note that ultimately, these findings are part of a balancing test. The district court should weight all the factors in deciding this issue. This balance will not be overturned absent an abuse of discretion.
693 F.2d at 1241. Substantial need has also been found under other circumstances such as (1) upon a showing that the document is necessary to impeach a witness; (2) upon a showing that the document bears directly on substantive issues raised in the complaint; and (3) upon a showing that the documents are highly relevant to, probative of, and may be outcome determinative of some of the issues in the litigation. Fed. Election Comm’n v. Christian Coalition, 178 F.R.D. 61, 85-86 (E.D.Va.1998).[8]
¶ 64. Also the Fifth Circuit has listed two non exhaustive factors that a court should consider in making a determination of undue hardship. In re Intern’l Sys. & Controls, 693 F.2d at 1240-41. These factors included (1) a witness is unable to recall the events in question, or is unavailable; and (2) unusual expense in order to gather information. Id. Other factors include (1) whether the substantial equivalent of information is available via deposition; (2) lapse of time between the information being recorded in the document and the litigation; and (3) possible witness hostility. Fed. Election Comm’n, 178 F.R.D. at 86.[9]-[10]
¶ 65. Additionally, a party can waive the protections of the work product doctrine by disclosure of the information it seeks to protect. However, “mere voluntary disclosure to a third person is insuffi- *818 dent in itself to waive the work product privilege.” Shields, 864 F.2d at 382 (citing American Tel. & Tel. Co., 642 F.2d at 1298-99); 8 Wright & Miller, Federal Practice & Procedure § 2024; at 210 (1970) (See In re Grand Jury Proceedings, 43 F.3d 966, 970 (6th Cir.1994)).[11]
¶ 66. The work product doctrine is also not without its limits and exceptions as discussed below.

C. THE COMMON LEGAL INTEREST PRIVILEGE

¶ 67. The Fifth Circuit has described the common legal interest privilege as:
According to our circuit precedents, the two types of communications protected under the CLI (common legal interest) privilege are: (1) communications between co-defendants in actual litigation and their counsel; see. e.g., Wilson P. Abraham Constr. Corp. v. Armco Steel Corp., 559 F.2d 250, 253 (5th Cir.1977); and (2) communications between potential co-defendants and their counsel. See Hodges, Grant & Kaufmann v. United States, 768 F.2d 719, 721 (5th Cir.1985); Aiken v. Texas Farm Bureau Mut. Ins. Co., 151 F.R.D. 621, 624 (E.D.Tx.1993).
In re Santa Fe Intern’l Corp., 272 F.3d at 710. In order for the common legal interest privilege to apply “there must be a palpable threat of litigation at the time of the communication, rather than a mere awareness that one’s questionable conduct might some day result in litigation, before communications between one possible future co-defendant and another ... could qualify for protection.” Id. at 711.
¶ 68. Although not specifically mentioned in Rule 502 of the Mississippi Rules of Evidence which provides for lawyer-client privilege it is encompassed in the rule as indicated in the comment to the rule. The Comment to Rule 502 states in pertinent part that:
The privilege extends to statements made in multiple party cases in which different lawyers represent clients who have common interests. Each client has a privilege as to his own statements. The FRE Advisory Committee’s Notes to Deleted Rule 503 state that the rule is inapplicable in situations where there is no common interest to be promoted by a joint consultation or where the parties meet on a purely adversary basis.
Miss. R. Evid. 502 cmt. However, Rule 26 of the Mississippi Rules of Civil Procedure, which provides for the work product doctrine, does not mention in any way shape or form a common interest privilege. Likewise, the Fifth Circuit has not addressed the application of the common legal interest privilege to the work product doctrine. However, the Fifth Circuit, while addressing the application of the common interest privilege to the attorney client privilege, did state that it applies to “communications.” Santa Fe Intern’l, 272 F.3d at 710.[12] Clearly, the implication is *819 that the privilege is not intended to extend to the work product doctrine. Therefore, any disclosure of claimed work product material to a third party waives the protections of the work product doctrine.
¶ 69. Since the common legal interest privilege is an extension of the attorney-client privilege it too is not without limitations and exceptions which will be discussed below.

D. THE CRIME FRAUD EXCEPTION

¶ 70. Though the attorney-client privilege, work product privilege, and common legal interest privilege shelter communications and documents from discovery, they are subject to exceptions. The crime fraud exception is one of these such exceptions. “Where a client seeks to use an attorney to further a continuing or future crime or fraud the broader public interest in the administration of justice is being frustrated, not promoted.” United States v. Dyer, 722 F.2d 174, 177 (5th Cir.1983). “The privileges for communications between client and attorney ceases when the purpose of the privilege is abused, when the lawyer becomes either the accomplice or the unwitting tool in a continuing or planned wrongful act.” United States v. Ballard, 779 F.2d 287, 292 (5th Cir.1986).
¶ 71. Rule 502 of the Mississippi Rules of Evidence; which provides for the Lawyer-Client Privilege provides for the crime fraud exception. Rule 502 states in pertinent part that:
(d) Exceptions. There is no privilege under this rule:
(1) Furtherance of Crime or Fraud. If the services of the lawyers were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or should have known to be a crime or fraud.
Miss. R. Evid. 502(d)(1). The Comment to Rule 502 also provides that:
Subsection (d) excludes certain instances from the privilege. Rule 502(d)(1) does not extend the privilege to advice in aid of a future crime or fraud. The provision that the client knew or reasonably should have known of the criminal or fraudulent nature of the act is designed to protect the client who is mistakenly advised that a proposed action is lawful. See McCormick, Evidence, § 75. Existing law in Mississippi on this point is unclear ... [T]he federal appellate court in Hyde Construction Co. v. Koehring Co., 455 F.2d 337 (5th Cir.1972), has determined that the Mississippi courts would allow the privilege when an attorney, acting as the client’s alter ego, commits a tort or fraud. It is uncertain, if this is an accurate reflection of the scarce Mississippi law on the point, but clearly under Rule 502(d)(1) the privilege in such a case would not apply.
Miss. R. Evid. 502 cmt. Although not specifically provided for in the Mississippi Rules of Evidence or Civil Procedure, it is clear that the crime fraud exception does apply to the work product doctrine and the common legal interest privilege. See In re Grand Jury Proceedings, 43 F.3d at 972; In re Burlington Northern, Inc., 822 F.2d 518, 524-25 (5th Cir.1987); In re Intern’l Sys. & Controls, 693 F.2d at 1241-42; In re John Doe Corp., 675 F.2d 482, 492 (2d Cir.1982); In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir.1979).
¶ 72. It is unclear which party bears the burden for establishing that the crime fraud exception applies. There seems to be much confusion about what exact standard of proof has been adopted for invok *820 ing the crime fraud exception. In 1933, the United States Supreme Court in Clark, held that:
There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told. There are early cases apparently to the effect that a mere charge of illegality, not supported by any evidence, will set the confidences free. See, e.g., Rynell v. Sprye, 10 Beav. 51, 54, 11 Beav. 618; In re Postlewaite, 35 Fh.D. 722, 724, cf. Regina v. Bollivant, (1900) 2 CBD 163, (1901) A.C. 196. But this conception of the privilege is without support in later rulings. “It is obvious that it would be absurd to say that the privilege could be got rid of merely be making a charge of fraud.” O'Rourke v. Darbishire, (1920)A.C. 581, 604. To drive the privilege away, there must be “ ‘something to give colour to the charges’; there must be ‘prima facie evidence that it has some foundation in fact.’ ” O’Rourke v. Darbishire, loc. cit., supra; also pp. 614, 622, 631, 633 of (1920) A.C. When that evidence is supplied, the seal of secrecy is broken. See, also, Regina v. Cox, (1884) 14 Q.B.D. 153, 157, 161, 175; cf. Bujac v. Wilson, 27 N.M. 112, 196 P. 513; In re Niday, 15 Idaho, 559, 98 P. 845.
289 U.S. at 15-16, 53 S.Ct. at 469-70 (emphasis added). Upon these statements, courts began requiring a prima facie showing in order to invoke the crime fraud exception.[13] In 1989, the Supreme Court in Zolin was called upon to review the application of the crime fraud exception and declined to address the quantum of proof necessary to establish the exceptions applicability. 491 U.S. at 564, 109 S.Ct. at 2626. However, due to criticisms of the standard adopted in Clark, the United States Supreme Court in Zolin included a footnote regarding the standard. The note reads as follows:
We note, however, that this Court’s use in Clark v. United States, 289 U.S. 1, 14, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933), of the phrase “prima facie case” to describe the showing needed to defeat the privilege has caused some confusion. See Gardner, The Crime or Fraud Exception to the Attorney-Client Privilege, 47 A.B.A.J. 708, 710-711 (1961); Note, 51 Brooklyn L.Rev. 913, 918-919 (1985) (“The prima facie standard is commonly used by courts in civil litigation to shift the burden of proof from one part to the other. In the context of the fraud exception, however, the standard is used to dispel the privilege altogether with affording the client an opportunity to rebut the prima facie showing” (emphasis in original)). See also In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1039 (C.A.2 1984). In using the phrase in Clark, the Court was aware of scholarly controversy concerning the role of the judge in the decision of such preliminary questions of fact. See 289 U.S., at 14, N., 53 S.Ct., at 469, n. The quantum of proof needed to establish admissibility was then, and remains, subject to question. See, e.g., Maguire & Epstein, Preliminary Questions of Fact in Determining the Admissibility of Evidence, 40 Harv. L.Rev. 392, 400 (criticizing courts insofar as they “have allowed themselves to be led into holding that only a superficial, *821 one-sided showing is allowable on any admissibility controversy”), 414-424 (exploring alternative rules (1927)); 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5052, p. 248 (1977) (suggesting, with respect tot he process of proving preliminary questions of fact, that “perhaps it is a task, like riding a bicycle, that is easier to do if you do not think to much about what you are doing”). In light of the narrow question presented here for review, this case is not the proper occasion to visit these questions.
491 U.S. at 564 n. 7, 109 S.Ct. at 2627, n. 7 (emphasis added). The footnote in Zolin seems to suggest that the prima facie standard is questionable.
¶ 73. The Fifth Circuit has defined pri-ma facie as:
[evidence] [s]ueh as will suffice until contradicted and overcome by other evidence ... [a] case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded.
In re Intern’l Sys. & Controls 693 F.2d at 1242 (quoting Black’s Law Dictionary (4th ed.1968)). In line with this definition, courts have adopted a two-part test for a prima facie showing:
The party challenging the privilege must (1) make an independent prima facie case that a crime [or fraud] has been committed, and (2) then demonstrate that the privileged information bears a relationship to the alleged crime or fraud.
Ward, 854 F.2d at 790 (citing In re International Systems & Controls Corp., 693 F.2d at 1243). The type of evidence which may be used to satisfy such burden not only includes the relevant non-privileged evidence which plaintiffs have gathered, but also the evidence which the defendants claim is privileged that the trial judge views in camera. See Zolin, 491 U.S. at 574-75, 109 S.Ct. at 2632.[14]
III. DID THE CIRCUIT COURT ERR BY CONCLUDING AFTER IN CAMERA REVIEW THAT THE THIRTY (SO) DOCUMENTS IN QUESTION, WHICH WERE CLAIMED BY THE PRIVILEGED, WERE DISCOVERABLE?
¶ 74. I have reviewed in camera the thirty documents in question. I find that the circuit court did not err when it decided that all thirty documents presented to this Court were discoverable. Without providing in-depth discussion into their content, a short explanation as to why I find all to be discoverable will be provided.
A ITEM ¡8: FILE MEMO BY HEWES CONCERNING HIS 1996 CONTACTS WITH MILLER.
¶ 75. In order to be afforded protection under the attorney-client privilege, an attorney-client relationship must exist. See Miss. R. Evid. 502(b). There was no attorney-client relationship between Hewes and *822 Miller. In fact, Hewes and Miller have conceded such. Clearly, Miller was not a client and was not even a fact witness to the tobacco litigation. Also, in order to be afforded protection under the work product privilege, the materials must have been prepared in anticipation of litigation. See Miss. R. Civ. P. 26(b)(3). There was no litigation or even possible litigation involving Hewes and Miller.
¶ 76. Hewes claims the file memo were protected under his attorney-client privilege and work product privilege concerning his representation of B & W; however, the document is still discoverable because the crime fraud exception applies.
¶ 77. Furthermore, the common legal interest privilege is not applicable. There was no common interest in litigation as between Hewes and Miller. Also, any common interest privilege claimed between B & W and Hewes also fails.

B. ITEM 23: VARIOUS LETTERS, MOTIONS, AND AFFIDAVITS.

¶ 78. The documents under Item 23 are not confidential communications within the meaning of the attorney-client privilege. However, they are work product. But since all the documents under Item 23 have been voluntarily disclosed to third parties; including the court and Lang-ston’s counsel; any privilege to these documents has been waived.

C. ITEM 25: A MEMORANDUM CONCERNING POSSIBLE ETHICAL VIOLATIONS STEMMING FROM MEETINGS BETWEEN HEWES AND MILLER.

¶ 79. Since it has already been established that there is no attorney-client relationship between Hewes and Miller, it is not necessary to address privilege applicability between them concerning this item. Likewise, the common interest privilege is not applicable.
¶ 80. Furthermore, the privilege claim that existed between Hewes and B & W as related to Item 25 falls squarely under the crime fraud exception.

D. ITEMS 26, 35, 36, 37, & 38: LETTER CONCERNING DRAFT AFFIDAVIT OF MIKE MILLER AND DRAFT AFFIDAVIT OF MIKE MILLER AS PREPARED BY HEWES.

¶ 81. Again, as discussed above no attorney-client relationship exists between Hewes and Miller; therefore the privilege claim as to Items 26, 35, 36, 37, & 38 is without merit. Furthermore, the common legal interest privilege does not apply.
¶ 82. As this draft document was intended to be disseminated to third parties, it is not privileged. Burton v. R.J. Reynolds Tobacco Co., 170 F.R.D. 481, 485 (D.Kan.1997) (citing United States Postal Serv. v. Phelps Dodge Ref. Corp., 852 F.Supp. 156 (E.D.N.Y.1994)). Additionally, the privilege claim as to Items 26, 35, 36, 37, & 38 between B & W and Hewes is subject to the crime fraud exception and is therefore discoverable.

E. ITEMS 30 & 31: DRAFT LETTERS AND AFFIDAVIT OF HEWES CONCERNING CONTACTS BETWEEN MILLER AND HEWES.

¶ 83. As established, there is no attorney-client relationship between Miller and Hewes which would invoke the applicability of privilege. Also, the common interest privilege is not applicable.
¶ 84. Furthermore, Items 30 & 31 are not protected by the attorney-client privilege as between B & W and Hewes since the documents are not “communications” within the meaning of the privilege. See Miss. R. Evid. 502(b). However, the documents are work product. Nevertheless, the documents are still discoverable since the crime fraud exception applies. Alternatively, the documents are discoverable since they are drafts of letters and affidavits to be presented to plaintiff counsel. *823 As stated above “[d]rafts of documents to be submitted to third parties, although prepared by counsel, are not generally privileged.” Id.

F. ITEMS W, Jp8, Jp9, 50, 52, 53, 55, 56, 57, 58, 59, 60, 61, 62, 63, 6h, 65, 66, 67, & 68: BILLING STATEMENTS AND DAYTIMER EXTRACTS OF HEWES CONCERNING CONTACTS AND CONVERSATIONS WITH MILLER AS BILLED TO B &W.

¶ 85. As discussed above, no attorney-client relationship exists between Miller and Hewes which would make the documents in Items 47-50, 52-58, & 55-68 privileged. Furthermore, no common legal interest privilege applies.
¶ 86. The documents in Items 47-50, 52-53, & 55-68 are not attorney work product, as they were not prepared in anticipation of litigation. The documents are however; as noted by Hewes and B & W in their briefs; confidential communications. As other courts have found, billing statements fall within the protections of the attorney-client privilege. See Chaudhry, 174 F.3d at 403; Clarke, 974 F.2d at 129. However, as has already been discussed the attorney client privilege is subject to the crime fraud exception. After reviewing these billing statements in camera, it is noted that the combined notations in Hewes’s day timer and billing statements to B & W show thirty-five entries which mention conversations and information concerning Miller. Those thirty-five entries alone total seventy-six and one/ tenth (76.1) hours billed to B & W concerning just conversations or information concerning Miller. Of those thirty-five (35) entries, nine (9) were made in March of 1996 about the time Miller and Hewes claim they had one conversation which was totally in “hypotheticals”. Those nine (9) entries alone total thirty and one half (30.5) billed hours to B & W. In 1997, Hewes’s billing statements show ten (10) entries concerning contacts and discussions with Miller which total thirty and one half (30.5) billed hours to B & W. Also, there are numerous other notations in the billing statements and daytime extracts which indicate that some fraudulent activity was afoot. Upon reviewing the in camera material and the non-privileged facts which are in the record, Langston has met her burden of proof and the crime fraud exception applies to Items 47-50, 52-53, & 55-68.

IV.

¶ 87. In sum, the circuit court did not abuse its discretion by reviewing the documents in question in camera. Furthermore, the circuit court correctly applied the law and made the necessary findings of fact to hold that the documents presented in camera were discoverable. Accordingly, the circuit court’s order compelling production of the thirty (30) documents should be affirmed and this case remanded for further proceedings. Miller was not a client or fact witness in the tobacco litigation. He was the soon to be ex-husband of an attorney who represented a plaintiff in tobacco litigation. Because of Miller’s position at Bell South he was able to access Langston’s telephone records and give such information to the attorney for the other side in the tobacco litigation. Such conduct should not be allowed to stand and be covered up from the light of day under the guise of attorney-client, work product, and common interest privileges. The chips should be allowed to fall where they may and the documents produced as ordered by the circuit court. For these reasons, I dissent.
EASLEY, J„ JOINS THIS OPINION. GRAVES, J., JOINS IN PART.

. Just one year after the alleged communications between Miller and Hewes began, Hewes and Brown & Williamson Tobacco Co. *811 successfully pursued Judge Landrum’s disqualification in the tobacco litigation.

. This quote comes specifically from Brief of Appellant George P. Hewes, III.

. See also In re Santa Fe Intern’l Corp., 272 F.3d 705, 710 n.7 (5th Cir.2001); United States v. Rodriguez, 948 F.2d 914, 916 (5th Cir.1991); Hodges, Grant & Kaufmann v. United States Gov’t, 768 F.2d 719, 721 (5th Cir.1985); In re Sealed Case, 737 F.2d 94, 99 (D.C.Cir.1984); In re Boileau, 736 F.2d 503, 506 n. 1 (9th Cir.1984); In re Grand Jury Investigation No. 83-2-35, 723 F.2d 447, 450 (6th Cir.1983); United States v. Lawless, 709 F.2d 485, 487 (7th Cir.1983); In re Grand Jury Subpoena Duces Tecum (Dorokee Co.), 697 F.2d 277, 280 (10th Cir.1983); United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982); United States v. Flores, 628 F.2d 521, 526 (9th Cir. 1980).

. See also Official Comment to Rule 502 which states that "[t]he lawyer’s claim is limited to one on behalf of the client; he himself has no independent claim.” (citing United States v. Jones, 517 F.2d 666 (5th Cir.1975)).

. See also In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir.1979).

. See also S. Ry. Co. v. Lanham, 403 F.2d 119 (5th Cir.1968); United States v. Chatham City Corp., 72 F.R.D. 640, 644 (S.D.Ga.1976).

. In reviewing the confidential documents in question, I have not found the need to apply the substantial need and undue hardship exception under the work product doctrine. That is not to say that the exception is not applicable, but only to say that it was not necessary in my analysis to rely upon this exception in finding that the documents should be produced.

. In Shields v. Sturm, Ruger & Co., 864 F.2d 379 (5th Cir.1989), the court held that compelled disclosure in another case of survey prepared by expert for manufacturer's attorney's did not waive manufacturer’s work product immunity regarding that survey.
In United States v. American Tel. & Tel., 642 F.2d 1285 (D.C. Cir.1980), the court held that while the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege.
In In re Grand Jury Proceedings, 43 F.3d 966 (5th Cir.1994), the court held that work product privilege encompassed third party communications.

. See also Hodges, Grant & Kaufmann v. United States, 768 F.2d 719, 721 (5th Cir.1985); Wilson P. Abraham Constr. Corp. v. Armco Steel Corp., 559 F.2d 250, 253 (5th *819 Cir.1977); Aiken v. Tex. Farm Bureau Mut. Ins. Co., 151 F.R.D. 621, 624 (E.D.Tex.1993).

. See also Neal, 27 F.3d at 1048; Indus. Clearinghouse, Inc., 953 F.2d at 1008; Ward v. Succession of Freeman, 854 F.2d 780, 790 (5th Cir.1988); In re Inter. Systems & Controls, 693 F.2d at 1242.

. In Zolin, the United States Supreme Court specifically held:
We hold that in camera review may be used to determine whether allegedly privileged attorney-client communications falls within the crime fraud exception. We further hold, however, that before a district court may engage in in camera review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception’s applicability. Finally, we hold that the threshold showing to obtain in camera review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged.
491 U.S. at 574-75, 109 S.Ct. at 2632.